IN THE FEDERAL DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALMA BULLOCK | : | Case No. 2:14-cv-05869-JHS |
| 5750 N. 20th Street | : | |
| Philadelphia, PA  19138 | : | |
| | : | |
| v. | : | |
| | : | |
| FOULKE MANAGEMENT CORP. | : | |
| and | : | |
| CHERRY HILL TRIPLEX | : | |
| 1805 W. Marlton Pike | : | |
| Cherry Hill, NJ 08002 | : | |

AMENDED COMPLAINT

A.   Introduction

     This actions arises out of a series of purchases and leases of motor vehicles by the Plaintiff, Alma Bullock, from Foulke Management Corp. dba Cherry Hill Triplex.

B.   Jurisdiction/Venue/Jury

     1.    Venue is proper under 28 U.S.C. §1391.  This matter arises concerning the lease/purchase of a motor vehicle situated in Philadelphia, Pennsylvania; moreover, the Plaintiff purchased /leased said vehicle as the result of solicitations made by the Defendant in Philadelphia, Pennsylvania. Defendant actively and regularly solicits customers from the Commonwealth of Pennsylvania, and expends substantial monetary resources to market itself by radio and television advertisements in the Philadelphia broadcast area. Defendant's website actively solicits business from the residents of Pennsylvania in a variety of manners, including string source code embedded within its metadata, with the words: "Used Cars Philadelphia PA" and "Philly Autoland Dealers."  A true and correct copy of Defendant's metadata is attached hereto, made a part hereof, and marked as Exhibit "A."  As such, venue is proper in the Eastern

District of Pennsylvania.Jurisdiction is founded in diversity between Plaintiff, a citizen of Pennsylvania, a citizen of Pennsylvania, and Defendants, a New Jersey corporation and New Jersey trade name, and is thus proper under 28 U.S.C. §1332. The matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. §1332.  A jury trial is demanded.


C.    Factual allegations

2.    Plaintiff, Alma Bullock, is an adult individual senior citizen residing at 5750 N. 20th Street, Philadelphia, Pennsylvania.

3.    Defendant, Foulke Management Corp., is a corporation with a principal place of business of 1805 W. Marlton Pike, Cherry Hill, New Jersey.

4.    Upon information and belief, Cherry Hill Triplex, is a corporation with a principal place of business of 1805 W. Marlton Pike, Cherry Hill, New Jersey and/or is a trade name utilized by Defendant Foulke Management Corp.

5.    Upon information and belief, Cherry Hill Triplex is trade name under which Defendant, Foulke Management Corp. regularly does business. As such, Defendants Cherry Hill Triplex and Foulke Management Corp. are hereinafter collectively referred to as Defendant in this matter.

6.    Plaintiff avers that Defendant acted by and through its authorized agents, servants, officers, and/or employees, including Defendant, at all times material hereto and described herein.

7.    On or about September 25, 2013, the Plaintiff viewed a newspaper advertisement of the Defendant offering for a sale a 2010 Honda.

8.      Plaintiff, who is elderly and handicapped, responded to the advertisement by telephone, contacted the Defendant's phone representative, and was told that the advertised 2010 Honda was still available and that the Plaintiff should come over to the Defendant's lot to see the same.

9.      The Plaintiff immediately proceeded to the Defendant's Cherry Hill dealership, an automotive sales facility in the business of selling and servicing cars, to shop for a vehicle.

10.     She repeatedly requested to see the advertised 2010 Honda; despite her many requests, she was never shown the advertised vehicle and saw no evidence that the advertised vehicle ever existed.

11.     Upon arrival, Defendant Cherry Hill and/or its sales representatives represented to Plaintiff that it regularly sells vehicles to citizens of Pennsylvania and routinely registers vehicles there.

12.     Plaintiff explained to Defendant's sales person Timothy that she was in the market for a safe, reliable vehicle to serve as day to day transportation and would need her handicapped parking transferred to any new vehicle.

13.     Defendant's sales personnel then represented that Defendant had available a 2012 black four door Nissan Versa that would truly meet Plaintiff's needs.

14.     The Defendant sold the Nissan Versa to the Plaintiff for a total of $13,000. See attached Exhibit "B."

15.     The entire balance of $13,000 was paid for by the Plaintiff at the time of purchase, on or about September 25, 2013.

16.     At the time of purchase, the vehicle had 11,108 miles on the odometer.

17.    The Plaintiff immediately after purchase began to experience serious mechanical defects with the Nissan Versa. She returned the vehicle for service on three separate occasions between September 25, 2013 and October 14, 2013 until Tim, an employee of the Defendant, agreed that the dealership would accept the Versa back contingent upon the Plaintiff 's purchase of another vehicle from dealership.

18.    Tim represented to the Plaintiff that they had another vehicle for the same thirteen thousand dollars that needed to be serviced, and that she should come back the next day and it would be ready for her.

19.    The Plaintiff returned the next day and was informed that the vehicle promised to her the day before had been sold. Tim then showed the Plaintiff a 2011 Jeep Patriot 4 door SUV which he presented as being suitable for her needs; the Plaintiff was then charged at least an additional $1,985 for the Jeep Patriot,.

20.    The Plaintiff purchased the Jeep Patriot under a contract which, as set forth in greater detail below, was subsequently taken by the Defendant's sales staff and was not returned to her. Attached as Exhibit "C" are the few pages from the contract the Plaintiff was left with, and attached as Exhibit "D" is a redacted copy of the Plaintiff's credit card statement reflecting a payment of $985 to the Defendant posted 10/14/13 and a payment of $1,000 to the Defendant posted on 10/15/13.

21.    As such, through October 14, 2013 the Defendant had received monies from the Plaintiff totaling $14,985.

22.    The vehicle was sold to the Plaintiff without a Pennsylvania inspection sticker; the Plaintiff was instructed to take the vehicle to Advanced Auto, 1826-28 South 11th Street, Philadelphia, Pennsylvania. The Plaintiff was informed by Defendant that Advanced Auto

handled the issue of inspection stickers for vehicles sold by Defendant to be registered in Pennsylvania.

23.     As the Plaintiff drove the Jeep home, the Jeep started shaking, sounded like it was going to shut off, and had a squeaking noise emanating from at least one of the wheels.

24.     The Plaintiff contacted the Defendant and subsequently returned to the Defendant's repair shop. When the vehicle was released back to the Plaintiff she was informed that nothing wrong had been found, but that the shop put on some lubrication. The Plaintiff was informed by the Defendant that she was used to driving a car and that a Jeep is not a car and sounds different.

25.     Defendant did not provide the Plaintiff with repair orders or documentations of repairs or work at this service call or any other previous service call, including those relating to the Nissan Versa.

26.     The Plaintiff subsequently took the vehicle to Advance Auto for inspection. Advance Auto technician Dominic Didonato, Jr. informed the Plaintiff that the vehicle failed inspection because the linkage of the front wheel to the frame through the lower control arm was severely damaged, that repair including welding was required, that a bolt was missing, and that the vehicle should be returned to the Defendant for repair.

27.     Didonato called the Defendant concerning the same, and upon completing said phone call informed the Plaintiff that she should go to the Defendant's shop the next day, to ask for Pat and that the vehicle would be repaired. Didonato stated that Defendant instructed him to affix an inspection sticker to the vehicle and that he had done so as instructed. A true and correct copy of the business card for Advance Auto provided to the Plaintiff by the Defendant is attached hereto as Exhibit "E."

28.   The Plaintiff returned to the Defendant's shop on November 15, 2013, where she was made to wait for over two hours before anyone would meet with her.

29.   The Plaintiff was directed to go to various sales floors of the Defendant, including those for KIA and Mitsubishi, was directed back to the service department, and finally was directed to come back the next day.

30.   The Plaintiff complained to Defendant employee John Morris and demanded that the Defendant accept the return of the Jeep as they would not repair it, and was informed by Morris that they would only be willing to apply the Jeep as a credit towards the purchase of a new vehicle.

31.   After Plaintiff was at the dealership for hours and shuffled from one part of the dealership to another to another, Morris stated that the Plaintiff did not need a used car, but instead needed a new car.

32.   Morris then showed the Plaintiff a 2014 Mitsubishi Outlander Sport, which she agreed to purchase, and executed a contract agreeing to purchase the same.  Morris drew up and/or had drawn up sales paperwork for the vehicle which Plaintiff executed. Said contract is not available to the Plaintiff as Defendant subsequently retained the same.

33.   Upon executing the contract, the Plaintiff was informed by Morris that he had run her credit and that she did not have sufficient credit to buy the vehicle. Morris stated that what she needed to do was to lease the vehicle, and that by making the lease payments she could prove to Mitsubishi that she would be able to make the payments involved in financing a vehicle.

34.   Morris then presented to Plaintiff a contract for a 36 month lease of the involved vehicle.

35.     The Plaintiff objected that she did not want to lease a vehicle, but rather wished to buy one. (Plaintiff notes that she had by this point paid the Defendant at least $14,985, representing 67% of the retail price of the Mitsubishi Outlander.)

36.     Morris informed the Plaintiff that he would have drawn up an agreement for a one year lease to own for the vehicle and that she could return the next day when the contract was ready.

37.     Faced with the option of leaving the dealership without a vehicle and not being knowledgeable enough to know how to obtain satisfaction, Plaintiff reluctantly acceded to Defendant's demands.

38.     The Plaintiff returned the next day and was presented with multiple contracts to sign. However, rather than a one year lease to own, the involved contracts were for a three year lease. Said contracts are attached as Exhibits "F" and "H." One contract contains sales tax, one does not. One contract contains nations made by Morris representing that at the close of the lease the amount the Plaintiff would owe for the purchase of the vehicle would be $1263.02. See Exhibit "F."

39.     Plaintiff believes and therefore avers that on November14th and 15th 2013 she was provided with multiple contracts, and signed multiple contracts, some of which were provided to her and some of which were not.

40.     Due to her age, the extended time she had spent at the dealership, and the multiple contracts that had been given to her to date, and that certain contracts had been retained by the Defendant and other contracts had been given to her, the Plaintiff remains unaware, to this date, of which of these numerous contracts is alleged by the Defendant to be the final contract in the matter.

41.     The lease paperwork provided up by Morris stated the total price of the involved motor vehicle was $30,300, with a trade in credit for the Jeep in the amount of $10,000. See attached Exhibit "F" and "H."

42.     However, the retail price of the involved vehicle was only $22,070. See attached Exhibit "G."

43.     Essentially, Morris purported to provide the Plaintiff with a $10,000 trade in credit for the Jeep, for which Plaintiff paid at least $14,985 to purchase. At the same time, Defendant inflated in the contract the price of the leased vehicle by $8,230, thereby rendering the "trade in" a sham.

44.     The Defendant, at lease under the contracts provided to the Plaintiff, thereby pocketed the entire $14,985 paid by the Plaintiff to date while providing the Plaintiff with nothing in return.

45.     Plaintiff avers that she was not provided copies of all documents.

46.     Defendant also prepared and had Plaintiff sign numerous documents and agreements concerning the various sales/leases of the involved vehicles.

47.     Plaintiff avers she was not provided copies of all these documents.

48.     Completely baffled by her experience with the Defendant, not knowing which contract was now applicable to her vehicle (or even if she had been provided with the final contract in the matter), the Plaintiff contacted the consumer affairs reporters/departments of first Fox 29 and then WPVI-TV attempting to obtain assistance.

49.     On February 14, 2014, the Plaintiff contacted Jim Donovan from Philadelphia CBS Channel 3 concerning the issue. She met with Mr. Donovan on several occasions, again

attempting to determine whether the vehicle had been purchased, whether it had been leased, and what if any of the contracts she had been supplied with were applicable to involved vehicle.

50.     In addition, she consulted with an attorney, Robert D. Shapiro, Esquire, who, after reviewing the Plaintiff's paperwork, wrote to Mr. William Kopp, General Manager of the Defendant, requesting that a full copy of the complete lease agreement be sent to her. That correspondence from Shapiro to Kopp also indicates that the Plaintiff had attempted on many occasions to contact the Kopp by telephone to obtain her complete paperwork and the lease to own agreement she had been promised, but that Kopp had never been able to take her phone calls. See correspondence attached as Exhibit "I."

51.     Shapiro's inquiry for the Plaintiff's complete contract paperwork sent unheeded by the Defendant.

52.     The Plaintiff to date has never received full copies of her various contracts with the Defendant and remains utterly befuddled as to which of these many contracts, and other contracts executed by her and retained by the Defendant, are alleged by the Defendant to be in force regarding this or other various vehicles in the matter.

53.     On April 30, 2014, Mr. Donovan had a telephone conference with Mr. Kopp, and had the Plaintiff on a separate phone line. During that conversation it could still not be determined what contract or contracts were applicable in the matter. In the course of that conversation Kopp referred to the "lease" but it was never made clear what the terms of any alleged lease were, or which of the many contracts the Plaintiff had been supplied with (and not supplied with) was the "lease" in question.

54.     Following her unsuccessful attempts to determine what the terms any alleged "lease" were and following her unsuccessful attempts to determine which document constitute

the final contract in the matter, and following Defendant's refusal to supply such document, the Plaintiff, on or about May 13, 2014, the Plaintiff made further attempts to determine the nature of the alleged "lease" and suit followed.

## SYSTEMIC BEHAVIOR

55.     Plaintiff believes and therefore avers that Defendant purposefully, knowingly, deceptively and recklessly engaged in deceitful, misleading, and unlawful trade practices and/or conduct, as stated above.

56.     Defendant has been sued by the New Jersey Attorney General's Office and Division of Consumer Affairs prior to this complaint, due to its systemic and patterned use of what has been called "bait and switch" schemes, such as the one in this case.  A true and correct copy of a New Jersey Department of Law & Public Safety Press Release dated March 14, 2006, at http://www.state.nj.us/lps/ca/press/triplex.htm, is attached hereto, made a part hereof and marked as Exhibit "I"

57.     As a result of such action by the New Jersey Attorney General, Defendant agreed to pay a $450,000 to the State of New Jersey for consumer restitution, to pay the state's attorneys fees, and agreed to $300,000 in civil penalties which were suspended. See attached Exhibit "J."

58.     The Defendant also entered into a Final Consent Judgment wherein the Defendant agreed to certain business practices, including but not limited to that Defendant:

        a.     Not represent that consumers are automatically approved for or otherwise guaranteed financing, and then fail to arrange for financing;

b.      Not represent that a motor vehicle is available for sale or lease, when the motor vehicle has been sold or leased;

c.      In accordance with a prior ruling of the Court, not offer for sale any motor vehicle unless the total selling price is plainly marked on the vehicle or where the vehicle is offered for sale;

d.      Shall undertake a search to discern the prior use (i.e. rental) and/or whether a motor vehicle has been involved in an accident or otherwise sustained damage and shall disclose such information to consumers, prior to their purchase or lease;

e.      Shall not represent that certain products (i.e. GAP coverage) are mandatory, when in fact they are not;

f.      Shall not misrepresent the final down payment or monthly payment that a consumer will be required to make for the sale or lease of a motor vehicle in the sales document;

g.      Shall provide consumers with an opportunity to review all sales documents before signing and shall provide them with copies of all signed sales documents.

See attached Exhibit "J."

59.      Plaintiff believes that Defendant employed an unscrupulous and unlawful "bait and switch" tactic upon her, to trick Plaintiff into purchasing the three subject vehicles, each at an inflated price and under circumstances that were misleading, false, and misrepresented.

60.      Defendant engaged in the above conduct, in part, because Plaintiff was identified as a frail, elderly, handicapped person who offered little defense or resistance to the persuasive tactics it engaged.

61.      Plaintiff believes that Defendant intentionally advertises older and less expensive vehicles that are not made available for the purchasing public, in order to attract potential customers to its dealership.

62.     In furtherance of the above acts, Plaintiff believes that Defendant intentionally engages customers in lengthy, high-pressure sales presentations to convince prospective purchasers to buy more expensive vehicles.

63.     Plaintiff believes that Defendant engages in the above conduct in the following ways, among others:

     a.   Advertising claims stating: "no credit check" and "you instantly qualify, regardless of your credit."

     b.   Advertising that a consumer would qualify for credit, then failing to deliver on that promise;

     c.   Using "bait and switch" pricing practices by selling motor vehicles at a price higher than the advertised price, failing to honor the advertised price and advertising a motor vehicle that was not for sale;

     d.   Failing to honor the advertised sales and/or lease price of a motor vehicle;

     e.   Misrepresenting the lowest available Annual Percentage Rate (APR) on consumer loans;

     f.   Failing to disclose that the motor vehicle had previously been damaged and that substantial repair or body work had been performed;

     g.   Failing to disclose to consumers prior to purchase or lease that a motor vehicle had been used as a rental vehicle;

     h.   Failing to disclose, adjacent to the motor vehicle's advertised price, a price that includes deductions for a manufacturer's rebate and/or dealer's discount;

     i.   Otherwise using small print, graphic illustrations and location to obscure material facts in its advertisements, and;

j.   Failing to maintain copies of applicable advertisements within 180 days of a sale or lease transaction.

See Plaintiff's Exhibits "J" and "K."

64.   Plaintiff believes that Defendant realizes substantial windfall profits through the above-described practices.

65.   Plaintiff believes that Defendant's actions were especially egregious in this case as Plaintiff is an elderly, impaired senior, easily confused, who suffers from severe and permanent physical disabilities.

66.   Plaintiff believes that Defendant engaged in unlawful sales practices with intent to deceive, after identifying that Plaintiff was a particularly vulnerable customer.

67.   Defendant intentionally and unjustly took advantage of Plaintiff's disabilities and leveraged its unequal bargaining position to reap windfall profits.

68.   Additionally, Plaintiff avers that the conduct engaged in by Defendant Cherry Hill herein is commonly referred to as a "Spot" and/or "Yo-Yo" delivery.

69.   Plaintiff avers that as in this case, the dealer in a "Spot" and "Yo-Yo" transaction negotiates what the consumer perceives as a fair sale price, at attractive terms, which the dealer then has signed and completed.  The customer signs a RISC and the car is delivered.  However, unlike the non-"Spot" delivery case, the consumer is "yanked back" or "Yo-Yo'ed" to the dealership later.

70.   Plaintiff further avers that, as in this case, the dealer first contacts the consumer under false pretenses calculated to secure the consumer's return to the dealership.  Among the excuses usually given are those that were employed in securing Plaintiff's return in this case.

71.    Plaintiff avers that when the consumer arrives as instructed, he/she is provided misinformation and is lied to by dealer personnel, just as in this case.

72.    Plaintiff avers that the means employed to obtain cooperation from the consumer here are typical of those commonly utilized in similar schemes, though elevated to an even higher level of outrageousness by Defendant Cherry Hill herein.

73.    Plaintiff avers that such means include, but are not limited to, statements that:

    a.   The loan was declined;

    b.   A different bank must be utilized to secure the loan;

    c.   The contract must be re-written due to some irregularity;

    d.   Dealer oversight in preparing documents;

    e.   Dealer inadvertence in preparing documents; and/or

    f.   Additional funds and/or elevated monthly payments necessary to complete the financing (as here).

74.    Plaintiff avers that, in truth, the additional amounts sought are nothing more than extortive demands for pure dealer profit secured by using deceptive tactics.

75.    Plaintiff avers that Defendant engages in "Spot" and/or "Yo-Yo" delivery transactions routinely.

76.    Plaintiff avers that the "Spot" and/or "Yo-Yo" delivery techniques are unlawful, deceptive, misleading and/or fraudulent as described herein.

77.    Plaintiff avers that the post-sale conduct of Defendant Cherry Hill, by and through its employees, and the statements made in furtherance thereof were total, complete, and utter fabrications intended to defraud Plaintiff over and over again.

78.    Plaintiff avers that Defendant Cherry Hill's conduct was fostered by business practices and ongoing business objectives of collecting additional, unearned, post-sale dealer profits from consumers like Plaintiff and/or artificially inflating Defendant Cherry Hill's sales statistics.

79.    Plaintiff avers that Defendant Cherry Hill's conduct was intentional and/or undertaken in furtherance of a systematic plan to deceive consumers through employment of deceptive business practices and/or false statements.

80.    Plaintiff avers that Defendant Cherry Hill has or may have withheld the submission of vehicle loan papers, purchase contracts, odometer statements, Pennsylvania Department of Transportation registration applications and other transactional papers as required by law to coerce additional costs and financing from Plaintiff at a later time.

81.    Plaintiff avers that such conduct was not limited to this case, but was, and is, habitual, systematic, ongoing and unrelenting in Defendant Cherry Hill's business model and practice, of leveraging post-sale revenue from unsuspecting consumers, such as Plaintiff herein.

82.    Plaintiff avers that Defendant Cherry Hill habitually and routinely engages in the conduct alleged above as a scheme to deceive and defraud consumers before and after the sale.

83.    Plaintiff avers that Defendant Cherry Hill has sold thousands of cars as "Spot" and/or "Yo-Yo" delivery and habitually represents at a later time/date to its customers that financing was not secured and/or additional funds were required to complete the sale and has been subject to suit by its customers for this very conduct.

84.    Plaintiff avers that Defendant Cherry Hill makes such representations to consumers as here knowing them to be false, misleading, deceptive, and/or fraudulent.

85.    Defendant was aware in this case and was/is aware in other customer transactions that the signing of a RISC by a customer and dealer representative completes a binding contract under state and federal law without further contingencies due or permitted.

86.    Plaintiff avers that Defendant Cherry Hill was aware in this case and was/is aware in those other cases that the RISC is an integrated document, memorializing (among other things) that financing has been secured under terms stated therein and approved by the named lender.

87.    Plaintiff avers that Defendant Cherry Hill knew that it could not restructure or supersede state law, federal lending law and contract law by creating other documents and self-serving papers that purport to change the terms of integrated contracts entered into with Plaintiff on the date of delivery of the first subject vehicle.

88.    Plaintiff avers that the RISC is a binding, integrated, completed sales contract, disclosing necessary finance terms, lender, rates and payments.

89.    Plaintiff avers that the RISC is not a condition precedent instrument, but is in fact a binding integrated contract, evidencing a completed sales transaction.

90.    Plaintiff avers that despite Defendant Cherry Hill's state of knowledge as a licensed automotive dealer selling cars in the State of New Jersey, Defendant Cherry Hill regularly, routinely, and unlawfully attempts to have customers sign documents purporting to supersede all other agreements, contracts and understandings.

91.    Plaintiff avers that the purpose(s) of the documents Defendant Cherry Hill uses is/are to:

        a.  Unlawfully confuse, coerce and misrepresent consumers' rights and remedies; and,

    b.  Make it appear to the consumer that Defendant Cherry Hill has superior, unilateral, contractual rights, as well as legal entitlements and remedies to enter and rescind contracts, either before or after the sale.

92. Plaintiff avers that the "Yo-Yo" delivery schemes, such as the ones perpetrated in this matter, are calculated to deceive the consumer after a completed sales transaction for no other purpose but to secure unearned dealer profit.

93. Plaintiff further avers that the "Yo-Yo" scheme is most pronounced in cases where, as here, the dealer concludes the customer is unsophisticated in business transactions, inexperienced and/or vulnerable to such scams.

94. Upon reaching the conclusion that Plaintiff was an unsophisticated buyer of automobiles, Defendant Cherry Hill utilized tactics and schemes to drive up the price of the vehicle.

95. Plaintiff avers that her unsophisticated nature is substantially the same as the thousands of other such consumers that Defendant Cherry Hill has taken advantage of since opening its business.

96. Plaintiff avers that some or all of the unearned dealer profit and/or post-sale dealer profit in such cases is/was never reported as revenue of the business, but instead went unaccounted for in the transaction.

97. Plaintiff avers that to secure its unlawful objectives, Defendant Cherry Hill trains its personnel and finance officers in the ways of deception, fraud, and misrepresentation to reap these additional profits.

98. Plaintiff avers that Defendant Cherry Hill's sale and post-sale techniques in this case occurred as a direct result of the training described in the previous paragraph.

99. Plaintiff avers that Defendant Cherry Hill has been the subject of private suits numerous times for the same conduct as alleged herein, some of which have resulted in judgments against Defendant Cherry Hill.

100.    Plaintiff avers that the statement referenced in the preceding paragraphs demonstrates that Defendant Cherry Hill routinely, regularly, unabashedly, and repeatedly engages in the conduct alleged herein.

101.    Plaintiff believes that Defendant intentionally tricked her into purchasing the second subject vehicle and leasing the third subsequent vehicle.

102.    Plaintiff avers that Defendant Cherry Hill's customers are handled in ways calculated to cause physical and mental exhaustion to ensure that consumers are at their absolute weakest during the sales process.

103.    In this case, Plaintiff avers that Defendant purposefully made the Plaintiff wait for hours and bounced the Plaintiff from department to department when she came attempting to have her vehicle repaired, in order to cause further physical and mental exhaustion to ensure that she was at her absolute weakest during these times and most susceptible to suggestion.

104.    Plaintiff avers that Defendant Cherry Hill utilizes its staff in concerted, illicit, unlawful, and commercially unconscionable ways to extract undisclosed, unearned, and excessive windfall profits through altered terms, changed agreements, fabrication, misrepresentation, and overstating products and services.

105.    Plaintiff avers that Defendant Cherry Hill's tactics in this case and others included unnecessary delays during negotiations, false statements as to the reason for such delays, general deception, and dishonesty, both during and after the sales process.

106.    Plaintiff avers that Defendant Cherry Hill's tactics in this case and others included utilizing and having purchasers sign multiple, conflicting contracts, retaining some contracts while providing the purchasers with copies of others, and in utilizing contracts in multiple parts and contracts referring to or incorporating other contracts so that the Defendant might pick and choose which contracts to present as constituting the bargain made between the Defendant and its customers, including but not limited to the Plaintiff.

107.    Plaintiff avers that at no time in this case did the financial institution require as a condition of the sale for Plaintiff to pay any additional deposit and/or to finance the loan at the interest rate Defendant specified on the RISC and/or to enter into a lease rather than a purchase.

108.    Plaintiff avers that at the time Defendant Cherry Hill re-wrote each contract and/or took back a vehicle, Plaintiff was not in breach of any term or aspect of any RISC.

109.    Plaintiff suffered financial losses and personal embarrassment arising from the purchase and subsequent issues with the vehicles.

110.    Plaintiff has serious concerns about safety, reliability, and merchantability of the second subject vehicle.

111.    Plaintiff has no other alternative but to operate the vehicle.

112.    Defendant acted with the intent that Plaintiff rely on the omission, suppression and concealment.

113.    Plaintiff did in fact rely on the aforementioned misrepresentations.

114.    Plaintiff's damages include, but are not limited to the following: purchase and/or lease price of the cars, all incidental costs, repair costs, estimate cost, taxes, registration, insurance, and all collateral charges not specifically cited, but ascertainable.

115.    Plaintiff has been and will continue to be financially damaged due to Defendant's conduct.

116.    Defendant refused to cure.

117.    Defendant refused to accept return on the involved Mitsubishi.

118.    Defendant presented the Plaintiff with and had the Plaintiff sign a dizzying array of contracts and attachments, and certain of said contracts contained clauses purporting to incorporate "any attachments" so to confuse the Plaintiff and therefore prevented there from being any single, integrated contract in the matter; as a result, the Plaintiff was prevented from knowing what contract or contract terms have been applied to her, or alleged by the Defendant to be applicable in the this matter.

119.    Indeed on 11/15/13 alone, the Plaintiff was asked by the Defendant to sign not only the contracts attached as Exhibits "F" and "H," but also the attached Exhibits "L" and "M," to which the Plaintiff also obtained the Plaintiff's signature, all of which Exhibits "F," "H," "L," and "M" purport to be contracts to a single vehicle, an all of which were executed by the Plaintiff at the Defendants' request on November 15, 2013.

## COUNT I
## STATUTORY FRAUDULENT MISPRESENTATION

120.    Plaintiff hereby incorporates all facts and allegations set forth in this Complaint by reference as if fully set forth at length herein.

121.    The representations upon which Plaintiff relied on in purchasing both subject vehicles were fraudulent in that:

a. Defendant misrepresented that no other vehicles aside from the subject vehicles would satisfy Plaintiff's needs.

b. Defendant misrepresented that the vehicle which Plaintiff had seen in Defendant's advertising was no longer available or refused to discuss said vehicle.

c. Defendant failed to divulge the defects, damage, need for repair, mechanical concerns and history of first subject vehicle prior to sale to Plaintiff.

d. Defendant misrepresented that the fourth RISC, representing the second contract to the third vehicle, was a one year lease to own agreement.

e. Defendant misrepresented that it attempted to repair the first and second subject vehicles.

f. Defendant misrepresented to Plaintiff that she had no meaningful option but to purchase the second vehicle and lease the third.

g. Defendant misrepresented to Plaintiff on several occasions that Plaintiff would have to make additional and unnecessary cash deposits in order to finalize the sale of subject vehicles.

h. Defendant misrepresented and grossly under-appraised the value of Plaintiff's trade-in vehicle, as memorialized in the second RISC and third and fourth RISCs.

i. Defendant grossly misrepresented to Plaintiff the terms and conditions of the financing agreements.

122.    Aforesaid representations were made in violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law.

123.    Aforesaid representations were made in violation of the New Jersey Consumer Fraud Act.

124.    Aforesaid representations were misrepresentations of fact under common law.

125.    Reliance upon the representation(s) was/were a primary element of Plaintiff's purchase of the vehicles.

126.    Defendant intended for the Plaintiff to rely upon information supplied, to induce her to purchase the subject vehicles.

127.    Plaintiff would not have purchased the subject vehicles if Defendant provided truthful information.

128.    Plaintiff would not have purchased the first or second subject vehicle if she had known that they required extensive repairs to return the vehicles to marketable and merchantable condition.

129.    Plaintiff would not have leased the third vehicle if she had known that there were other and less expensive vehicles sold by Defendant that met her needs and had she known that the vehicle contract priced the vehicle approximately $10,000 over the vehicle's retail price.

130.    Plaintiff exercised all due diligence and reasonably relied on Defendant's representations.

131.    Plaintiff avers that if Defendant had disclosed the true facts, history, conditions, attributes, and defects prior to delivery, Plaintiff would not have purchased the vehicles.

132.    Defendant's intentional, malicious, false, deceptive, oppressive, reckless, wrongful, unconscionable and/or outrageous acts and/or omissions as aforesaid were inconsistent with the duty of care owed.

133.    Defendant's actions were in bad faith.

134.    Defendant engaged in the aforesaid unlawful conduct solely for pure financial gain and has no other justification for its actions.

135.    Plaintiff avers that she occupies the position of a reasonable consumer in the community.

136.    Defendant occupies the position of an automobile dealership regularly interacting within the community.

137.    Defendant conducts all, or substantially all, of its business actions with the public at large.

138.    Plaintiff believes and therefore avers that Defendant has engaged in the very same conduct in thousands of other transactions.

139.    Plaintiff believes and therefore avers that Defendant conducts its business practices in a consistent pattern to deceive and/or defraud consumers.

140.    The aforesaid behavior is without justification or excuse.

141.    Defendant conducts its business practices for the sole purpose of profit and business revenue, but without care in adhering to state mandated standards of conduct.

142.    Plaintiff believes and therefore avers that Defendant's oppressive and outrageous conduct will continue unless cases such as this compensate victims in a meaningful way, by an award in addition to actual damages, of substantial punitive damages.

143.    Defendant has secured from its conduct here and in other sales transactions, unjust enrichment, windfall profits and substantial benefits resulting from the type of unlawful conduct alleged above.

144.    Defendant would not secure such windfall profits if it provided truthful information to consumers.

145.   Plaintiff believes and therefore avers that Defendant's alleged conduct has a substantial impact on the public, which Plaintiff avers must be penalized and discouraged.

146.   Defendant's yearly net revenue from the above behavior supports an award herein of punitive damages of at least 5 percent of Defendant's annual revenue.

147.   Plaintiff has suffered damages as a direct and proximate result of Defendant's conduct.

Plaintiff demands judgment against Defendants, jointly and severally, and request damages be awarded in an amount in excess of $75,000, together with court costs and interest.

## COUNT II
## COMMON LAW FRAUD

148.   Plaintiff hereby incorporates all facts and allegations set forth in this Complaint by reference as if fully set forth at length herein.

149.   Plaintiff avers that Defendant had a duty under common law to represent and disclose all material facts before selling the vehicles.

150.   Upon information and belief, Defendant breached its duty through false representation of material facts and/or failure to disclose material facts.

151.   Upon information and belief, Defendant had knowledge of the falsity.

152.   Defendant intended to induce Plaintiff's reliance upon the misrepresentations.

153.   Plaintiff actually relied on Defendant's misrepresentations to her detriment.

154.   Upon information and belief, Defendant made material false representations regarding the condition of the subject vehicle during the sales presentation.

155.   Upon information and belief, Defendant intended for Plaintiff to rely upon these material false representations during the sales presentation.

156.    In reliance upon Defendant's material false representations, Plaintiff purchased the subject vehicles.

157.    Defendant made these material false representations willfully, recklessly, maliciously and with the intent to injure and defraud Plaintiff.

158.    But for Defendant's material false representations, Plaintiff would not have purchased the subject vehicles.

159.    Plaintiff has been harmed by Defendant's material false representations.

160.    Defendant's conduct entitles Plaintiff to punitive damages to redress the wrongs done to Plaintiff in this matter and to curb such behavior in the future involving other consumers, regardless of their state of residency.

161.    Defendant's conduct as a licensed business engaged in the sale of motor vehicles, dealing with the public at large on a daily basis, and advertising on the internet for interstate sales, poses a substantial risk to consumers everywhere if such conduct as alleged in this case is permitted to go without punitive consequence.

162.    Upon information, Defendant's intentionally fraudulent, malicious, false, deceptive, oppressive, illegal, wrongful, unconscionable, and/or per se acts of unfair trade practices and/or actions, and/or omissions, as aforesaid, were deliberate and/or in bad faith, for the express purpose of causing Plaintiff to purchase the subject vehicle.

163.    Defendant's conduct was calculated to cause Plaintiff to rely upon the aforesaid misrepresentations for pure financial gain and no other justifiable or lawful purpose.

164.    Plaintiff occupies the position of reasonable consumer in the community, and Defendant occupies the position of a seller of automobiles, conducting all or substantially all of its business activity with the public.

165.    Plaintiffs believe and aver that a substantial impact to the public exists by conduct such as that alleged against Defendant herein, which must be financially discouraged.

166.    Plaintiff avers that a judgment failing to impact Defendant's income will encourage similar behavior in the future.

167.    Plaintiffs seek punitive damages from Defendant for the willful and wanton conduct alleged, as aforesaid, to discourage and/or end abusive sales practices, in an amount the fact finder deems appropriate.

168.    Plaintiff has suffered damages as a result of Defendant's conduct.

Plaintiff demands judgment against Defendants, jointly and severally, and request damages be awarded in an amount in excess of $75,000, together with court costs and interest.

## COUNT III
## NEGLIGENCE

169.    Plaintiff hereby incorporate all facts and allegations specified in all preceding paragraphs, by reference as if fully set forth at length.

170.    The representations upon which Defendant sold the vehicles were negligent in that Defendant knew, or should have known the actual vehicle histories and ongoing defects and/or non-conformities, prior to sale to Plaintiff.

171.    Defendant had a duty to disclose the aforementioned material history of the vehicles, but failed to do so, causing Plaintiff to purchase the subject vehicles.

172.    Plaintiff believes and avers that Defendant knew the true history of the vehicles and negligently and deliberately failed to disclose in order to make the sale.

173.    Upon information and belief, Defendant made negligent, affirmative false representations of fact as to the vehicle histories.

174.    Defendant negligently failed to advise Plaintiff of these facts before or after the sale of either vehicle.

175.    Defendant negligently failed to accept return of the vehicles after these facts were disclosed to Plaintiff and brought to Defendant's attention.

176.    Reliance upon the false and/or negligently represented information was a primary element of Plaintiff's purchase of the vehicles.

177.    Plaintiff avers that if Defendants had disclosed the true history of the vehicles, Plaintiff would not have purchased the vehicles, nor would any reasonable consumer under these circumstances.

Plaintiff demands judgment against Defendants, jointly and severally, and request damages be awarded in an amount in excess of $75,000, together with court costs and interest.

## COUNT IV
## MAGNUSON-MOSS FEDERAL TRADE COMMISSION IMPROVEMENT ACT

178.    Plaintiff hereby incorporates all facts and allegations set forth in this Complaint by reference as if fully set forth at length herein.

179.    Plaintiff is a "Consumer" as defined by 15 U.S.C. §2301(3).

180.    Defendant is a "Warrantor" as defined by 15 U.S.C §2301(5).

181.    The purpose for which this product is normally used is personal, family, and household use.

182.    The warranties were express and implied.

183.    Defendant cannot make the vehicles comply with the terms of the warranties.

184.    Plaintiff has suffered damages and, in accordance with 15 U.S.C §2310(d), Plaintiff is entitled to bring suit for such damages and other legal and equitable relief.

185.   The Magnuson-Moss Warranty Act, Section 2304(a)(4), specifically entitles Plaintiff to a refund of all money paid for the subject products without charge.

186.   Plaintiff avers that upon successfully prevailing upon the Magnuson-Moss claim herein, a full refund of all money paid for the subject vehicles is recoverable and is demanded against Defendant.

187.   The **Magnuson-Moss Warranty Act, Section 2310(d)(1)** provides:

The Magnuson-Moss Warranty Act, Section 2304(a)(4) provides: If a consumer finally prevails on an action brought under paragraph (1) of this subsection, he may be allowed by the court to recover as part of the judgment a sum equal to the amount of aggregate amount of costs and expenses (including attorney fees based upon actual time expended), determined by the court to have been reasonably incurred by the Plaintiff for, or in connection with the commencement and prosecution of such action, unless the court, in its discretion shall determine that such an award of attorney's fees would be inappropriate.

188.   Plaintiff avers that upon successfully prevailing upon the Magnuson-Moss claim herein, all attorney fees are recoverable and are demanded against Defendant.

Plaintiff demands judgment against Defendants, jointly and severally, and request damages be awarded in an amount in excess of $75,000, together with court costs and interest.

## COUNT V
## PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW: PER SE VIOLATIONS

189.   Plaintiff hereby incorporates all facts and allegations set forth in this Complaint by reference as if fully set forth at length herein.

190.   Plaintiff is a "Person" as defined by 73 P.S. §201-2(2).

191.   Defendant is a "Person" as defined by 73 P.S. §201-2(2).

192.   The Defendant did all times pertinent hereto advertise in Pennsylvania, solicit business in Pennsylvania, and represent itself and utlize search terms contaning the phrases

"Used Cars Philadelphia PA" and "Philly Autoland Dealers" in atttempt to solicit business from residents of the Commonwealth of Pennsylvania, including but not limited to the Plaintiff.

193.    The **Pennsylvania Unfair Trade Practices and Consumer Protection Act, 73 P.S. §201-2(4)**, defines "unfair or deceptive acts or practices" to include the following conduct:

> (vii).    Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;

> (xiv).   Failing to comply with the terms of any written guarantee or warranty given to the buyer at, prior to, or after a contract for the purchase of goods or services is made;

> (xvi).   Making repairs, improvements or replacements on tangible, real or personal property of a nature or quality inferior to or below the standard of that agreed to in writing;

> (xvii).   Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

194.    Plaintiff believes, and therefore avers, that Defendant's conduct falls within the aforementioned definition of "unfair or deceptive acts or practices."

195.    Defendant purposefully engaged Plaintiff in an unreasonably lengthy, misleading, stressful, and tiring marathon sales presentation which lasted more than 12 hours calculated to cause physical and mental exhaustion to ensure that Plaintiff was at her absolute weakest.

196.    Defendant purposefully engaged Plaintiff in the aforesaid manner because it knew or had reason to know that Plaintiff was already vulnerable due to her age, education level and/or physically infirmities.

197.    Defendant's representative "Jimmy" purposefully drove Plaintiff to her bank to coerce her into withdrawing the cash deposit required to finalize the sale.

198.    Defendant deceived Plaintiff into believing Plaintiff was finalizing the sale of the first subject vehicle at the time of sale of the second subject vehicle.

199.    Defendant tricked Plaintiff into purchasing the second subject vehicle.

200.    Plaintiff believes that aforesaid circumstances and shameful conduct by the Defendant constitute duress and/or coercion.

201.    Plaintiff would not have purchased the second subject vehicle from Defendant if circumstances had been different.

202.    Plaintiff would not have leased the third subject vehicle under any legitimate and/or lawful circumstances.

203.    Plaintiff has suffered damages as a result of Defendant's conduct.

204.    Defendant's actions constitute otherwise reckless, wanton, or willful conduct which is prohibited by the Act.

205.    Section 201-9.2(a) of the Act provides for private causes of action for any person "who purchases or leases goods or services primarily for personal, family and household purposes."

206.    The Act authorizes the Court, in its discretion, to award up to three (3) times the actual damaged sustained for violations.

207.    Plaintiff seeks actual damages as defined by the UTPCPL.

208.    Plaintiff seeks treble of her actual damages.

Plaintiff demands judgment against Defendants, jointly and severally, and request damages be awarded in an amount in excess of $75,000, together with court costs and interest.

## COUNT VI
## PENNSYLVANIA AUTOMOTIVE INDUSTRY TRADE PRACTICES ACT

209.    Plaintiff hereby incorporates all facts and allegations set forth in this Complaint by reference as if fully set forth at length herein.

210.    Defendant's conduct as aforesaid violates the express terms of

**Section 301.2. Pennsylvania Automotive Trade Practices Act** which states:

**Advertising and sales presentation requirements.**
With respect to an advertisement or sales presentation offering or making available for sale a new or used motor vehicle or maintenance service or repair on a new or used motor vehicle, the following will be considered unfair methods of competition and unfair or deceptive acts or practices:

   \*     \*     \*

(4) The failure or refusal to sell a motor vehicle or other goods or services under terms or conditions, including price or warranty, which a motor vehicle manufacturer or dealer or repair shop has advertised or otherwise represented.

   \*     \*     \*

(6) The making of a representation or statement of a fact in an advertisement or sales presentation if the advertiser or salesperson knows or should know that the representation or statement is false and misleading or if the advertiser or salesperson does not have sufficient information upon which a reasonable belief in the truth of the representation could be based.

   \*     \*     \*

211.    Defendant's conduct as aforesaid violates the express terms of

**Section 301.4. Pennsylvania Automotive Trade Practices Act** which states:

(a) With regard to a motor vehicle dealer, the following will be considered unfair methods of competition and unfair or deceptive acts or practices:

   \*     \*     \*

(6) Failing to refund the full amount of a purchaser deposit promptly when:

   \*     \*     \*

(iv) The dealer fails to deliver to the purchaser a motor vehicle which conforms to the terms of the contract.

212.    Plaintiff avers that pursuant to the Pennsylvania Automotive Industry Trade

Practice Act, Defendant's conduct violated the prohibitions and/or requirements set

forth above.

213.    Plaintiff avers that Defendant's conduct as aforesaid is/are, by statutory mandate,

per se violations entitling Plaintiff to damages pursuant to the Pennsylvania Unfair

Trade Practices and Consumer Protection Law (UTPCPL), 73 Pa. C.S. § 201-1 et

seq., specifically actual damages and treble damages pursuant to §201-9.2.

214.    Plaintiff has suffered damages as aforesaid and hereby demands the full measure

of the claims asserted under the Pennsylvania Automotive Industry Trade Practices

Act and UTPCPL, and brings this action to recover same.

215.    Plaintiff seeks the cost to obtain the value of the lost goods/property; contract

price of the vehicles plus all collateral charges; consequential damages; incidental

damages; attorney fees and costs, as well as other expenses.

Plaintiff demands judgment against Defendants, jointly and severally, and request

damages be awarded in an amount in excess of $75,000, together with court costs and interest.

## COUNT VII
## NEW JERSEY CONSUMER FRAUD ACT

216.    Plaintiff hereby incorporates all facts and allegations set forth in this Complaint

by reference as if fully set forth at length herein.

217.    In the alternative, Plaintiff avers that New Jersey law also does or may apply to

this sales and lease transactions.

218.    Plaintiff is a "Person" as defined by N.J.S.A. 56:8-1(d), the New Jersey Consumer

Fraud Act.

219.   Defendant is a "Person" as defined by N.J.S.A. 56:8-1(d), the New Jersey Consumer Fraud Act.

220.   Defendant's actions surrounding the sale of the subject vehicles were unconscionable.

221.   Defendant's agents also acted with a reckless and callous disregard for Plaintiff's rights in negotiating and handling Plaintiff's purchase/lease of the subject vehicles.

222.   Defendant's actions surrounding the sale and servicing of said vehicles constitute an unconscionable commercial practice, deception, fraud, false pretense, false promise, and/or misrepresentation.  Defendant and its agents acted affirmatively in such a manner as to be an unlawful commercial practice.

223.   Defendant acted knowingly with the intent to cause Plaintiff's reliance thereupon.

224.   Defendant knowingly concealed, suppressed, or omitted facts material to the transactions at issue.

225.   Defendant knowingly engaged in patently false and unlawful "bait and switch" and "Yo-yo" sales and marketing schemes to deprive the Plaintiff of her personal property.

226.   Defendant knowingly and recklessly created conditions of duress and coercion calculated to "seal the deal" with a vulnerable consumer.

227.   Defendant knowingly and purposefully misrepresented the material terms of sale for the sole purpose of reaping windfall and unjust profits.

228.   Such misrepresentations include, but are not limited to: conditions of sales transaction; sale price; financing; trade-in value; monthly payments; interest rates; credit applications; miscellaneous charges; the capabilities and descriptions of subject vehicles.

229.   The Act prohibits the aforementioned action of Defendant in the sale of the subject vehicles.

230.    At all times pertinent hereto, Defendant refused to provide the Plaintiff with warranty service, failed to document warranty service, and/or intentionally failed to properly service or repair vehicles so as to "yo-yo" the Plaintiff into the purchase/lease of subsequent vehicles. Plaintiff believes and therefore avers the reckless, wanton and willful failure of Defendant to comply with the terms of the written and implied warranties constitutes an unfair method of competition.

231.    Plaintiff has and will continue to suffer ascertainable financial loss proximately caused by the Defendant's conduct.

Plaintiff demands judgment against Defendants, jointly and severally, and request damages be awarded in an amount in excess of $75,000, together with court costs and interest.

## COUNT VIII
## TRUTH IN LENDING ACT

232.    Plaintiff hereby incorporates all facts and allegations set forth in this Complaint by reference as if fully set forth at length herein.

233.    At all relevant times, Plaintiff was a "consumer" as contemplated in the Truth in Lending Act ("TILA"), 15 USC 1601 et seq. in that she purchased the subject vehicle for personal, family, and household purposes.

234.    At all relevant times, Defendant was a "creditor" as contemplated by the TILA in that it arranged for the financing of this transaction and regularly finances and/or arranges for the financing of hundreds of consumer purchases of motor vehicles.

235.    Defendant has violated the TILA by engaging in the following prohibited practices:

    a.    Quoting Plaintiff financing rates and/or monthly payment figures and estimates *prior to* checking Plaintiff's credit history.

b. Quoting Plaintiff financing rates and/or monthly payment figures and estimates *prior to* submitting Plaintiff's financing application.

c. Collecting cash deposits from Plaintiff based on misrepresentations of guaranteeing and/or securing a particular monthly payment amount *prior to* submitting Plaintiff's financing application.

d. Collecting cash deposits from Plaintiff based on misrepresentations of guaranteeing and/or securing a particular monthly payment amount *prior to* checking Plaintiff's credit history.

e. Working with its collaborative lender to charge Plaintiff an unjust annual percentage rate despite the Plaintiff's solid credit history.

f. Working with its collaborative lender to charge Plaintiff an unjust and undeserved annual percentage rate in order to reap windfall profits for itself.

g. Making misrepresentations to Plaintiff regarding, but not limited to, conditions of sales transaction; sale price; financing; monthly payments; interest rates; credit applications; and miscellaneous charges.

236.   Plaintiff has suffered actual damages as a result of Defendant's conduct.

Plaintiff demands judgment against Defendants, jointly and severally, and request damages be awarded in an amount in excess of $75,000, together with court costs and interest.

## DEMAND FOR JURY TRIAL

Please take notice that Plaintiff demands a jury trial in the case.

RESPECTFULLY SUBMITTED,
KIMMEL & SILVERMAN, P.C.

By: _____
JASON GRESHES, ESQUIRE
ID# 71903
Attorney for Plaintiff
30 East Butler Pike
Ambler, PA 19002
(215) 540-8888
(215) 540-8817
Email: jgreshes@lemonlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this ~~31st~~ 2nd day of ~~October~~ Nov., 2014, a copy of the foregoing document was sent via Federal Express.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  All parties that have been served are listed below and will be served by regular U.S. Mail, first-class, postage pre-paid.  Parties may access this filing through the Court's electronic filing system.

Laura D. Ruccolo, Esquire
CAPEHART & SCATCHARD, PA
8000 Midlantic Drive, Suite 300S
Po Box 5016
Mt. Laurel, NJ  08054
Counsel for Defendants, Foulke Management Corp and Cherry Hill Triplex

Respectfully submitted,

Kimmel & Silverman, P.C.

Date: ~~10/31/14~~ 11/3/14

By: ___/S/_____

Jason L. Greshes, Esq.
Attorney for Plaintiff
Kimmel & Silverman, P.C
30 E. Butler Pike
Ambler, PA 19002
(215) 540-8888
jgreshes@lemonlaw.com

8/21/2014                                   view-source:www.cherryhilltriplex.com/index.htm

```
 1  <!DOCTYPE html>
 2  <html xmlns="http://www.w3.org/1999/xhtml" xml:lang="en-US" lang="en-US"
     class="v9-global-0007-v1 multi-franchise chrysler dodge jeep kia mitsubishi
     suzuki fiat ram vertical-11 index    blue-white  ">
 3  <head>
 4  <!--
 5  wcoms29.dealer.ddc p7070
 6  -->
 7  <meta charset="iso-8859-1" />
 8  <title>Cherry Hill Triplex Car Dealers New Jersey (NJ) | Used Cars Philadelphia
     PA | New Dodge Chrysler Jeep Ram Dealer | KIA - Mitsubishi & Suzuki Dealership in
     New Jersey | New Car & Used Car Dealers in Cherry Hill 08002 | FIAT Dealer New
     Jersey | Philly Autoland Dealers</title>
 9  <meta name="keywords" content="new car dealers nj, used car dealer new jersey,
     cherry hill triplex, cherry hill car dealership, dodge dealer, chrysler, jeep
     dealership, ram trucks, fiat, mitsubishi, kia dealers nj, new jersey, south
     jersey, auto repair," />
10  <meta name="description" content="Welcome to Cherry Hill Triplex! Browse through
     more than 1000 new cars for sale near Philadelphia. We have the best brands in
     stock, such as FIAT, Mitsubishi, KIA, Dodge Chrysler and Jeep. Visit our new car
     dealer in Cherry Hill for the Largest inventory in the area!" />
11  <meta name="author" content="Cherry Hill Triplex" />
12  <meta name="expires" content="never" />
13  <meta name="distribution" content="global" />
14  <meta name="robots" content="index, follow" />
15  <meta name="google-site-verification"
     content="F8Yvb9rEGJx3FNqjBOonxVDnltnxyygI4DqCXljvTlo" />
16  <meta name="msvalidate.01" content="F7F529152CB5A527C4B43AFEEA2CB701" />
17  <meta name="y_key" content="d75f2f1f03f9b473" />
18  <meta name="og:title" content="Cherry Hill Triplex Car Dealers New Jersey (NJ) |
     Used Cars Philadelphia PA | New Dodge Chrysler Jeep Ram Dealer | KIA - Mitsubishi
     & Suzuki Dealership in New Jersey | New Car & Used Car Dealers in Cherry Hill
     08002 | FIAT Dealer New Jersey | Philly Autoland Dealers" />
19  <meta name="og:type" content="website" />
20  <meta name="og:url" content="http://www.cherryhilltriplex.com/index.htm" />
21  <meta name="og:description" content="Welcome to Cherry Hill Triplex! Browse
     through more than 1000 new cars for sale near Philadelphia. We have the best
     brands in stock, such as FIAT, Mitsubishi, KIA, Dodge Chrysler and Jeep. Visit
     our new car dealer in Cherry Hill for the Largest inventory in the area!" />
22  <meta name="locale" content="en_US" />
23  <link  el="canonical" href="/index.htm" />
24  <link rel="shortcut icon" type="image/vnd.microsoft.icon"
     href="http://static.dealer.com/v8/global/images/site-favicon-default.ico?
     1356028138000" />
25  <!--[if ! lte IE 8]><!--><link rel='stylesheet' type='text/css'
     media='screen,projection'
     href='http://static.dealer.com/v9/media/css/ddc/v2/css/default.css?1405601865000'
     /><!--<![endif]-->
26  <!--[if lte IE 8]><link rel='stylesheet' type='text/css'
     media='screen,projection' href='http://static.dealer.com/v9/media/css/un_versa-
     lef/v1.1/ie5.css?1319215538000' /><![endif]-->
27  <!--[if ! lte IE 8]><!--><link rel='stylesheet' type='text/css'
     media='screen,projection'
     href='http://static.dealer.com/v9/widget/default/v1/css/widget.css?
     1391800232000' /><!--<![endif]-->
28  <!--[if ! lte IE 8]><!--><link rel='sty...                            xt/css'
```

PLAINTIFF'S
EXHIBIT
"A"

PLEASE READ THIS DOCUMENT CAREFULLY. IF YOU DO NOT FEEL THAT YOU HAVE HAD SUFFICIENT TIME TO READ THE DOCUMENT, YOU SHOULD NOT SIGN IT.

DO NOT SIGN THIS CONTRACT IN BLANK. DO NOT SIGN THIS CONTRACT AND THE OTHER CONTRACT DOCUMENTS

IF YOU DO NOT AGREE WITH ALL TERMS OF THE CONTRACT.

Motor Vehicle Retail Order Agreement

**CHERRY HILL TRIPLEX**

1805 W. Marlton Pike • Cherry Hill NJ 08002
(856) 663-1500

☐ New   ☐ Off Lease
☐ Demo  ☐ Daily Rental
☐ Used

☐ DODGE / CHRYSLER / JEEP      #2
☐ MITSUBISHI / SUZUKI
☐ KIA

DEAL #: 00035566
CUST #: 178037
CUSTOMER'S E-MAIL ADDRESS
NONE

Customer ___ALMA MAUDE BULLOCK___  Date __09/25/2013__  Stock No. __42154__

Customer _____

Address __5750 NORTH 20TH STREET__  __PHILADELPHIA__  __PA__  __19138__

Home Phone __215-713-0404__  Work Phone _____  Salesperson __TIMOTHY  G46OC10__

Please Enter My Order For One __2013 NISSAN__  Model __VERSA S/SV/SL__

Body Type __SEDAN 4 DR__  Color __BLACK__  Miles __11100__  VIN __3 N 1 C N 7 A P 4 X L 9 4 X 1 X__

Interior Trim Color _____

Prior to Delivery of the vehicle listed above, customer shall elect one of the following and so advise dealership:
• Cash Purchase   • Finance Purchase   • Lease

IF A CREDIT SALE, REQUIRED INFORMATION CONTAINED ON A SPOT DELIVERY DISCLOSURE STATEMENT(S) INCLUDING BUT NOT LIMITED TO A SPOT DELIVERY AGREEMENT ARE MADE A PART OF THIS ORDER.

| | |
|---|---|
| TO BE DELIVERED ON OR ABOUT | 09/25/201 |
| Price of Unit | 11661.30 |
| Additional Equipment (options) | NA |
| | NA |
| | NA |

| IF A PURCHASE, THE FOLLOWING APPLY: | |
|---|---|
| Dealer Prep (U/C only) | NA |
| N/C or U/C Service Contract | NA |
| TOTAL PRICE | 11661.30 |
| Less Trade-in | NA |
| TOTAL TAXABLE AMOUNT | 11661.30 |
| Sales Tax | 933.90 |
| Motor Vehicle Tire Fee | NA |
| NJ Supplemental Titling Fee | NA |
| On Line Registration | 8.60 |
| Estimated Motor Vehicle Fee (See Paragraph 15 on Reverse Side) | 98.20 |
| Documentary Service Fee (See Paragraph 16 on Reverse Side) Clerical Expense Fee $269.00 Document Transmittal Fee $30.00 | $299.00 |
| PAY-OFF ON TRADE IN | |
| TOTAL | 13000.00 |
| Rebate (if applicable) | NA |
| Deposit | NA |
| BALANCE IN CASH OR CERTIFIED CHECK DUE ON DELIVERY | 13000.00 |

IF A LEASE, COMPLETE DISCLOSURE OF ALL LEASE TERMS AND CONDITIONS IS CONTAINED ON A SEPARATE LEASE CONTRACT.

IF A LEASE, THE FOLLOWING WILL ALSO APPLY:

| | |
|---|---|
| MONTHLY PAYMENT AMOUNT $ | NA |
| Term: _____ Months | NA |
| Mileage per Year | NA |
| CASH DUE AT DELIVERY $ | NA |

IF A NEW VEHICLE SALE . . .

The only warranties applying to this vehicle are those offered by the manufacturer. The selling dealer sells this vehicle "as is" and hereby disclaims all warranties, either express or implied, including any implied warranties of merchantability and fitness for a particular purpose. Any liability of the selling dealer with respect to defects or malfunctions of this vehicle including, without limitation, those which pertain to performance or safety, (whether by way of "strict liability", based upon the selling dealer's negligence, or otherwise), is expressly excluded and customer hereby assumes any such risks. The manufacturer's warranty is not affected by this disclaimer of warranties by the selling dealer.

TRADE-IN DESCRIPTION AND ALLOWANCE

| | | | |
|---|---|---|---|
| Year ____ | Make ____ | | Model ____ |
| VIN ____ | | | Mileage ____ |
| Trade-in Value | NA | | Appraisal Date ____ |
| Less Balance Owed: | NA | | |
| Net Trade-in Allowance | NA | | |
| Balance Owed to: ____ | | | |
| Address: ____ | | | |
| Account No. ____ | | | |
| Info. From ____ | Good Thru ____ | | |

IF USED VEHICLE SALE — CHECK APPROPRIATE BOX

☐ This vehicle is sold "as is" and the selling dealer hereby expressly disclaims all warranties, either express or implied, including any implied warranties of merchantability and fitness for a particular purpose. Any liability of the selling dealer with respect to defects or malfunctions of this vehicle including, without limitation, those which pertain to performance or safety, (whether by way of "strict liability," based upon the selling dealer's negligence, or otherwise), is expressly excluded and customer hereby assumes any such risks.

OR

☐ The only dealer warranty on this vehicle is the limited warranty which is issued with and made a part of this order form.

ALL USED VEHICLE SALES DEALER'S OBLIGATION

The laws of New Jersey require Motor Vehicle Dealers to make all necessary repairs, without charge, or return the full purchase price to the customer in the event a used vehicle sold and intended to be registered in this State fails to meet State Inspection Standards for the issuance of a certificate of approval due to a defect that is not the result of the customer's own act. The undersigned, before entering into this contact, has been informed of the dealer's obligation above and agrees to have the used vehicle inspected within 14 days from the date of delivery, of such vehicle.

Date 09/25/2013   X _____  Customer's Signature

WAIVER OF DEALER'S OBLIGATION (USED VEHICLE SALE)

The undersigned, has read and understood the above Dealer's Obligation, and does hereby WAIVE AND RELEASE the DEALER'S OBLIGATION to make repairs without charge or return the full purchase price if the vehicle fails to meet State Inspection Standards for the issuance of a certificate of approval, unless the cause for the vehicle's rejection is an item which is "covered" by New Jersey's Used Car Lemon/Warranty Law (P.L. 1995, Chpt. 373).

Date ____   X _____  Customer's Signature

Date ____   X _____  Customer's Signature

Customer certifies that the frame on the trade-in vehicle has never sustained any damage or been repaired. All airbags are at original equipment and have never been deployed. Also, that the vehicle has never been in a flood or had the emissions control system tampered with or altered. Customer certifies the above mileage of trade-in vehicle is accurate.

Customer warrants any trade-in vehicle to be the property, free and clear of all liens and encumbrances except as otherwise noted on this order. Customer further warrants that the title/deliver to dealer is original, legally valid and binding title to any trade-in vehicle, and that said title does not contain any "title brand." Customer certifies that the vehicle has never been in an accident or suffered damage. Moreover, customer agrees to indemnify and hold dealer harmless should any of the above statements be false, including, but not limited to attorney's fees the dealer may incur defending any actions with third party concerning the prior history of the vehicle.

Date ____   X _____  Customer's Signature

Date ____   X _____  Customer's Signature

Customer agrees that this Order on the face and on the reverse side and any attachments to it includes all the terms and conditions. Customer further agrees this Order cancels and supersedes any prior Motor Vehicle Retail Order Agreements and as of the date signed by Dealer or authorized agent. If Customer, prior to delivery, elects to lease the vehicle described above, Customer and Dealer agree to execute a lease contract which shall contain full disclosure of all lease information. THIS ORDER SHALL NOT BECOME BINDING UNTIL ACCEPTED BY DEALER OR ITS AUTHORIZED REPRESENTATIVE. Customer by execution of this Order acknowledges that they have read the terms and conditions and have received a true copy of the Order. I am 18 years of age or older and of full legal capacity to enter into this contract. ANY DISPUTE BETWEEN CUSTOMER AND DEALER SHALL BE BROUGHT IN ARBITRATION IN THE STATE OF NEW JERSEY AND NEW JERSEY LAW SHALL APPLY. CUSTOMER AGREES THAT CUSTOMER WILL BRING ANY CLAIMS, CUSTOMER MAY HAVE AGAINST DEALER, EXCEPT FOR UCC CLAIMS BUT, INCLUDING CLAIMS UNDER THE NEW JERSEY CONSUMER FRAUD ACT, WITHIN 180 DAYS FROM THE DATE OF THIS AGREEMENT AND IF NOT BROUGHT WITHIN 180 DAYS WILL BE TIME BARRED. UCC CLAIMS MUST BE BROUGHT WITHIN ONE YEAR.

Date ____   X _____  Customer's Signature

Accepted By: ___09/25/2013___  Dealer or the Authorized Representative

Date ____   X _____  Customer's Signature

**IMPORTANT: READ THE TERMS AND CONDITIONS ON THE BACK OF THIS ORDER BEFORE SIGNING**

"The motor vehicle sales price shown on the Vehicle Buyer Order or Lease Contract for your vehicle are an approximation of the actual fees that will be charged by the New Jersey Division of Motor Vehicles so your options sale and registration for your vehicle. When your title work has been completed, we will refund any excess fees that have been collected. If we have underestimated your motor vehicle fees, we will seek payment of such amount from you."

WE OWE

| QTY. | NAME OF ITEM |
|---|---|
| | CUSTOMER UNDERSTANDS ALL TERMS AND CONDITIONS . . . . . . . . . |
| | |
| | NOTHING OWED OR PROMISED TO CUSTOMER . . . . . . . . . . |

I hereby accept this WE OWE with the understanding that it is valid for only (30) THIRTY DAYS FROM DATE OF ISSUANCE, and that APPOINTMENT WITH THE SERVICE DEPARTMENT before the above work can be performed. (FOR APPOINTMENT – CALL SE___

PLAINTIFF'S EXHIBIT
B
ALL-STATE LEGAL

## USED MOTOR VEHICLE LIMITED WARRANTY

**CHERRY HILL TRIPLEX**
1805 W. Marlton Pike
CHERRY HILL, NJ 08002
(855) 665-6799

Name: ALMA MAUDE BULLOCK
Address: S 5750 NORTH 20TH STREET
PHILADELPHIA, PA 19138

Year: 2013
Make: VESPA S/50/75L
Model:

## Waiver of New Jersey Used Motor Vehicle Limited Warranty

## PRIVACY NOTICE

FOLKE MANAGEMENT CORP
CHERRY HILL, NJ 08002

ALMA MAUDE BULLOCK
N 5750 NORTH 20TH STREET

Date: 03/25/2013

Date: __09/25/2013__ _____   MA _____   Customer's Signature

If the payoff balance and/or lien(s) on my automobile trade-in as described below are in excess of $ _____, I understand that the excess shall be due and payable on demand to CHERRY HILL TRIPLEX.

Date: __09/25/2013__   Make _____   Model _____   Year _____   Color _____

Customer understands that customer will be responsible to make any and all payments due or claimed to be due by any leasing company with whom the customer had entered into a lease agreement.
CHERRY HILL TRIPLEX will not pay off customer's lease. CHERRY HILL TRIPLEX will not be responsible for any lease termination charges, excess mileage, damage, or any of the charges associated with a customer's lease.

Date: __09/25/2013__ _____   Customer's Signature

I do hereby understand that I am obligated to deliver to CHERRY HILL TRIPLEX a satisfied certificate of ownership covering Serial # _____

Make: __ALMA MAUDE BULLOCK__   Model: __VERSA S/SV/SL__   Color _____   Serial # __3N1CN7AP3CL925174__

Year: __2013__   Make: __NISSAN__

Date _____

charges associated with the repossession.
I agree to provide any further information that may be required in the form of stipulations or conditions including documents.
I understand that if CHERRY HILL TRIPLEX wishes to have my vehicle surrendered and I refuse to do so, CHERRY HILL TRIPLEX may repossess the vehicle and I agree to be responsible for any and all fees, costs
advertisements in consideration for the personal and individual negotiations and agreements reached as part of my purchase of __2013 NISSAN__ (description of vehicle purchased).
_____ (customer's name printed) hereby relinquish and waive any claims to any financial benefit represented in any and all of CHERRY HILL TRIPLEX promotions

Dated: __09/25/2013__

Signed: _____   agree to assist CHERRY HILL TRIPLEX in obtaining financing for me in connection with the proposed purchase of the vehicle described as: _____

Name: __ALMA MAUDE BULLOCK__
Address: __5750 NORTH 20TH STREET__
City __PHILADELPHIA__   State __PA__  Zip __19138__
Telephone Number: __215-713-0402__
Vehicle purchase date: __09/25/2013__

Customer (Buyer):

Warranty: If the used motor vehicle has:
24,000 miles or less, the warranty is 90 days or 3,000 miles, whichever comes first.
24,001 to 60,000 miles, the warranty is 60 days or 2,000 miles, whichever comes first.
60,001 to 100,000 miles, the warranty is 30 days or 1,000 miles, whichever comes first.

## USED MOTOR VEHICLE LIMITED WARRANTY

# CHERRY HILL TRIPLEX

1805 W. Marlton Pike
CHERRY HILL, NJ 08002
(856) 665-6799

Year: __2013__   Vehicle: _____
Make: __NISSAN__
Model: __VERSA S/SV/SL__   VIN: __3N1CN7AP3CL925174__
Odometer reading: __11.004__

# Waiver of New Jersey Used Motor Vehicle Limited Warranty

I understand that because the following used motor vehicle is seven (7) or less model years old and has an odometer reading which exceeds 60,000 miles, the dealer is required to give a 30-day or 1,000 mile warranty, whichever comes first. However, after negotiating the price of the vehicle with the selling dealer, I hereby waive (give up) my right to a limited warranty on this vehicle and purchase the vehicle "as is". I understand that because the used motor vehicle is sold "as is", it means that the vehicle is being sold to me by the dealer without any warranty, either expressed or implied, and that I will be solely responsible for the cost of any repairs to it.

By signing this document, I acknowledge that because of the age and mileage of the below described vehicle, I would have been entitled under the law to a 30-day or 1,000 mile (whichever come first) warranty. However, I have voluntarily waived my right to that warranty on this vehicle because I have negotiated a lower price for it without the warranty.

Year: _____   Make: _____   Model: _____

Vehicle Identification Number: _____   Odometer Reading: _____

Owner's Signature: _____   Date: 03/25/2013   Co-Customer's Signature (if applicable): _____

Date: 03/25/2013

## CUSTOMER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS CONTRACT.

DATE: 03/25/2013

CUSTOMER: Alex M

Customer's Signature

## CUSTOMER'S ACKNOWLEDGEMENT OF UNAVAILABILITY OF TITLE TO TRADE-IN VEHICLE.

TO: CHERRY HILL TRIPLEX:
In the event my title for any trade-in vehicle is not available at time of appraisal because it is being held by a lending institution, or for any other reason, I understand that Cherry Hill Triplex has reserved the right to adjust such trade allowance should an examination of title document/s indicate any of the following:

a brand, indicating the vehicle was previously titled in another state;
a brand, indicating the vehicle is a "flood" or "salvage" vehicle or was otherwise damaged;
a brand, indicating the vehicle is a "flood" or "salvage" vehicle for my past vehicle.

By signing this statement, which would cause a decrease in the value of such vehicle, because of the prior use or conditions, including a mention that the mileage as reflected on such title document/s is not the actual mileage on the vehicle.

My trade-in vehicle is a _____ Year _____ Make _____ Model _____ bearing VIN _____

Owner's Signature _____   Date 03/25/2013   Owner's Signature _____   Date 03/25/2013

CHERRY HILL TRIPLEX
CUSTOMER

## CUSTOMER ACKNOWLEDGEMENT

I acknowledge and understand by signing below that the actual cash value of my trade-in vehicle is less than the amount I/we still owe on the loan outstanding on that vehicle.

I/we understand that the difference between the actual cash value of my trade-in vehicle is being negotiated and will result in a negative equity.

I/we further understand that the negative equity is included and reflected in the purchase price I/we have paid for the vehicle listed on the Retail Installment Contract I/we have entered into and may be higher than the price listed on the vehicle I/we have purchased. I/we have voluntarily agreed to pay the price listed on the Retail Installment Contract.

Model Year _____   Make _____   Model _____

Owner's Signature _____   Date _____   Owner's Signature _____   Date _____

CHERRY HILL TRIPLEX
ACKNOWLEDGEMENT

Dealership Name: FULKE MANAGEMENT CORP.
Address: CHERRY HILL TON AVE 08002
Telephone: _____

Customer's Name (Printed): _____
Customer's Signature: ALMA MAUDE BULLOCK
Date: 03/25/2013

## PRIVACY NOTICE

Dealership Name, (WE, OUR, or US)
FULKE MANAGEMENT CORP.
Address: CHERRY HILL TON AVE 08002
Telephone: _____

Customer Name: ALMA MAUDE BULLOCK
Address: PHILADELPHIA PA 19111
Telephone: _____

Customer's Name (Printed): _____
Customer's Signature: ALMA MAUDE BULLOCK
Date: 03/25/2013

# Waiver of New Jersey Used Motor Vehicle Limited Warranty

I understand that because the following used motor vehicle is seven or less model years old and has an odometer reading which exceeds 60,000 miles, the dealer is required under the Used Car Lemon Law to give a 30-day or 1,000 mile warranty, whichever comes first. However, after negotiating the price of the vehicle with the selling dealer, I hereby waive (give up) my right to a limited warranty on this vehicle and purchase this vehicle "as is". I understand that because the used motor vehicle is sold "as is", it means that the vehicle is being sold to me by the dealer without any warranty, either expressed or implied, and that I will be solely responsible for the cost of any repairs to it.

By signing this document, I acknowledge that because of the age and mileage of the below described vehicle, I would have been entitled under the law to a 30-day or 1,000 mile (whichever come first) warranty. However, I have voluntarily waived my right to that warranty on the vehicle because I have negotiated a lower price for it without the warranty.

| Year | Make | Model |
|---|---|---|

Vehicle Identification Number _____

Date _____   Odometer Reading _____

Customer's Signature _____   Co-Customer's Signature (if applicable) _____

## CUSTOMER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS CONTRACT.

DATE _____   CUSTOMER _____

DATE _____   CUSTOMER _____

## CUSTOMER ACKNOWLEDGEMENT OF UNAVAILABILITY OF TITLE TO TRADE-IN VEHICLE

TO: CHERRY HILL TRIPLEX

In the event my title for my trade-in vehicle is not available at time of arrival because it is being held by a lending institution, or for any other reason, I understand that Cherry Hill Triplex has reserved the right to adjust each trade allowance...

My trade-in vehicle is a _____

Owner's Signature _____   Date _____   leaving VIN _____

I/We, acknowledge and understand by signing below that the actual cash value of my trade-in vehicle is less than the amount I/we still owe on the loan outstanding on that vehicle...

My trade-in vehicle is a _____

Owner's Signature _____   Date _____

Dealership Name _____
Address _____
Telephone _____

Signed _____   Dated _____

## PRIVACY NOTICE

In connection with YOUR transaction, WE may obtain personal nonpublic information about YOU from the following sources:

1. Information WE receive from YOU on an application for credit or other similar forms.
2. Information about YOUR transaction with US.
3. OUR policy is only to disclose YOUR personal nonpublic information to ONLY those companies that perform marketing services on OUR behalf or to other financial institutions with which we have joint marketing agreements.
4. WE do not disclose any nonpublic personal information about YOU to anyone, except as permitted by law.

Further, WE restrict access to YOUR nonpublic personal information to ONLY those employees who need to know that information to provide products or services to YOU. Employees cannot use YOUR information for any other purpose. WE maintain physical, electronic, and procedural safeguards that comply with federal regulations to guard YOUR nonpublic personal information.

CUSTOMER ACKNOWLEDGEMENT: The undersigned customer(s) acknowledge that they received a copy of this Privacy Notice at the time indicated below.

Customer Name _____
Address _____
Telephone _____

Customer's Signature _____   Date _____

Customer's Name (Printed) _____

PLAINTIFF'S EXHIBIT

CHERRY HILL TRIPLEX will not pay off customer leases. CHERRY HILL TRIPLEX will not be responsible for any lease termination charges, excess mileage, damage, or any of the charges associated with a customer's lease.
Customer understands that customer will be responsible to make any and all payments due or claimed to be due by any leasing company with whom the customer has entered into a lease agreement.

Date ___10/14/2013___

If the payoff balance and/or lien(s) on my automobile traded-in as described below are in excess of $ _____, I understand that the excess shall be due and payable on demand to CHERRY HILL TRIPLEX.

Year ___2012___

Date ___10/14/2013___

Make ___NISSAN___                                        Model ___VERSA S-SV/SL___

I do hereby understand that I am obligated to deliver to CHERRY HILL TRIPLEX, a satisfied certificate of ownership covering Serial # ___3N1CN7AP7CL843134___

Make ___ALMA MAUDE BULLOCK___                           Model ___VERSA S-SV/SL___           Color ___BLACK___          Year ___2012___

Date ___10/14/2013___

Year ___2011___

___ALMA MAUDE BULLOCK___                                        Model ___PATRIOT SPORT___                         VIN ___1J4NT1GB2BD706645___

advertisements in consideration for the personal and individual negotiations and agreements reached as part of my purchase of ___CHERRY HILL TRIPLEX___ (description of vehicle purchased),

I agree to provide any further information that may be required in the form of stipulations or conditions including documents.
I understand that if CHERRY HILL TRIPLEX wishes to have the vehicle surrendered and I relinquish to CHERRY HILL TRIPLEX, I agree to assist CHERRY HILL TRIPLEX in obtaining financing for me in connection with the proposed purchase of this vehicle described as

charges associated with the repossession.                     ___ (customer's name printed) hereby relinquish and waive any claims to any financial benefit represented in any and all of CHERRY HILL TRIPLEX promotions

Dated: ___10/14/2013___                                       Signed: _____

Customer (Buyer):                                            Customer's Signature _____          I understand that in the event _____          Customer's Signature _____

---

# USED MOTOR VEHICLE LIMITED WARRANTY

Name ___ALMA MAUDE BULLOCK___

Address ___5750 NORTH 20TH STREET___

City ___PHILADELPHIA___          State ___PA___  Zip ___19130___

Telephone Number ___215-713-0408___

Vehicle purchase date: ___10/14/2013___

Warranty: If the used motor vehicle has:     24,000 miles or less, the warranty is 90 days or 3,000 miles whichever comes first.
                                             24,001 to 60,000, the warranty is 60 days or 2,000 miles, whichever comes first.
                                             60,001 to 100,000 the warranty is 30 days or 1,000 miles, whichever comes first.

## CHERRY HILL TRIPLEX
### 1805 W. Marlton Pike
### CHERRY HILL, NJ 08002
### (856) 665-6799

Dealer (Seller):

Year ___2011___          Vehicle:
Make ___JEEP___
Model ___PATRIOT SPORT___
VIN ___1J4NT1GB2BD706645___
Odometer reading _____

### Terms

Dealer agrees to repair or replace any covered part of the above vehicle upon terms and conditions specified in a Covered Item specified in 2 below, subject to the following terms, conditions, exclusions and limitations:

1. What is covered by this limited warranty? Only the purchaser named above. This warranty is not transferable to any other person.

2. What parts of the vehicle are covered by this limited warranty? Under this warranty only "Covered Items" which include the following components of a used motor vehicle.
   a. Engine – all internal lubricated parts, timing chains, gears, timing belt, pulleys, port covers, oil pump and gears, water pump, valve covers, oil pan, manifolds, flywheel, harmonic balancer, engine mounts, seals and gaskets, and turbo housings; however, housing, engine block and cylinder heads are covered items only if damaged by the failure of an internal lubricated part.
   b. Transmission Automatic/Transfer Case – all internal lubricated parts, torque converter, vacuum modulator, transmission mounts, seals and gaskets.
   c. Transmission Manual/Transfer Case – all internal lubricated parts, transmission mounts, seals and gaskets, but excluding a manual clutch, pressure plate, throw-out bearing, clutch master or slave cylinder.
   d. Front Wheel Drive – all internal lubricated parts, axle shafts and bearings, seals and gaskets.
   e. Rear Wheel Drive – all internal lubricated parts, propeller shafts, supports and U-joints, axle shaft and bearings, seals and gaskets.

3. What is excluded from this limited warranty?
   a. Any and all parts not expressly specified in Part 2 above.
   b. The limited warranty excludes repair covered by any manufacturer's or repairer's warranty, as well as repairs of a covered item required because of collision, abuse, or the purchaser's failure to properly maintain the used motor vehicle in accordance with

3. Extension or alteration of warranty.
   The duration of this warranty shall be extended by a material defect of the used motor vehicle.

4. What are the dealer's obligations under this limited warranty?
   The dealer or its agent, upon taking the used motor vehicle is delivered to the dealer...

5. What are the purchaser's obligations under this limited warranty?
   To obtain repairs or replacements under the limited warranty, Purchaser must:
   a. Deliver the used motor vehicle to the dealer at the regular place of business.
   b. Pay $50 to the dealer for each repair of a covered item.

I acknowledge that I have read all of the provisions of this limited warranty and fully understand and accept it. I further acknowledge receipt of a copy of this limited warranty.

Customer's Signature _____

Co-Customer's Signature _____
(if applicable)

Date: ___10/14/2013___          Dealer's Signature: _____

PLAINTIFF'S EXHIBIT

# COMMONWEALTH OF PENNSYLVANIA

## CERTIFICATE OF TITLE FOR A VEHICLE

L.081

L3315340500135D-001

| 1J4NT1GA25BD270645 | 2011 | JEEP | 69987911501 BU |
|---|---|---|---|
| VEHICLE IDENTIFICATION NUMBER | YEAR | MAKE OF VEHICLE | TITLE NUMBER |

| ZW | 0 | NJ | 11/11/13 | 050652 | 0 |
|---|---|---|---|---|---|
| BODY TYPE | GVP | STAT CAP | PRIOR TITLE STATE | ODOM. PROD. DATE | ODOM. MILES | ODOM. STATUS |

| 9/30/11 | 11/11/13 | | | |
|---|---|---|---|---|
| DATE PA TITLED | DATE OF ISSUE | UNLADEN WEIGHT | GVWR | GCWR | TITLE BRANDS |

**ODOMETER STATUS**
0 = ACTUAL MILEAGE
1 = MILEAGE EXCEEDS THE MECHANICAL LIMITS
2 = NOT THE ACTUAL MILEAGE
3 = NOT THE ACTUAL MILEAGE ODOMETER TAMPERING VERIFIED
4 = EXEMPT FROM ODOMETER DISCLOSURE

**TITLE BRANDS**
A = ANTIQUE VEHICLE
C = CLASSIC VEHICLE
D = COLLECTIBLE VEHICLE
F = OUT OF COUNTRY
G = GROSSLY INADEQUATE FOR INSURANCE DISTRIBUTION "T"
H = AGRICULTURAL VEHICLE
I = LOGGING VEHICLE
P = FLYING A POLICE VEHICLE
R = RECONSTRUCTED
S = STREET ROD
T = RECOVERED THEFT VEHICLE
V = VEHICLE CONTAINS REISSUE VIN
W = FLOOD VEHICLE
X = FLYING A TAXI

REGISTERED OWNER(S)

ALMA MAUDE BULLOCK
5750 N 20TH ST
PHILADELPHIA PA 19138

FIRST LIEN FAVOR OF:

SECOND LIEN FAVOR OF:

If a second lienholder is listed upon satisfaction of the first lien, the first lienholder must forward this Title to the Bureau of Motor Vehicles with the registration form and fee.

FIRST LIEN RELEASED _____ DATE

BY _____
AUTHORIZED REPRESENTATIVE

MAILING ADDRESS

ALMA MAUDE BULLOCK
5750 N 20TH ST
PHILADELPHIA PA 19138

SECOND LIEN RELEASED _____ DATE

BY _____
AUTHORIZED REPRESENTATIVE

I certify as of the date of issue, the official records of the Pennsylvania Department of Transportation reflect that the person(s) or company named herein is the titled owner of the said vehicle.

BARRY J. SCHOCH, P. E.
Secretary of Transportation

**pennsylvania**
DEPARTMENT OF TRANSPORTATION

## APPLICATION FOR TITLE AND LIEN INFORMATION

SUBSCRIBED AND SWORN TO BEFORE ME:

| | MO | DAY | YR |
|---|---|---|---|

SIGNATURE OF PERSON ADMINISTERING OATH

If a co-purchaser other than your spouse is listed and you want the title to be listed as "Joint Tenants With Right of Survivorship" (On death of one owner, title goes to surviving owner) CHECK HERE ☐. Otherwise, the title will be issued as "Tenants in Common" (On death of one owner, interest of deceased owner goes to his/her heirs or estate).

IF NO LIEN, CHECK ☐    IS THIS AN ELT? (IF YES, FIN REQUIRED)  YES ☐ NO☐

1ST LIENHOLDER FINANCIAL INSTITUTION NUMBER:

1ST LIENHOLDER NAME

STREET

| CITY | STATE | ZIP |
|---|---|---|

IS THIS AN ELT (IF YES, FIN REQUIRED) YES ☐ NO☐

The undersigned hereby makes application for Certificate of Title to the vehicle described, and certifies the statements and other legal facts are truthful.

SIGNATURE OF APPLICANT OR AUTHORIZED OWNER

PLAINTIFF'S
EXHIBIT
(B.)
ALL-STATE LEGAL®

5554423

ALMA BULLOCK

Acct # XXXXXXXXXXXXXXXX
June 9, 2014
Page 3 of 10

# CHASE

P.O. BOX 15123
WILMINGTON, DE
19850-5123

| Payment Due Date: | 11/14/13 |
| New Balance: | |
| Minimum Payment: | |

Account number: XXXXXXXXXXXX

$ _____   Amount Enclosed

Make your check payable to: Chase Card Services

ALMA BULLOCK
5750 N 09TH ST
PHILADELPHIA PA 19130-2902

CARDMEMBER SERVICE
PO BOX 15153
WILMINGTON DE 19886-5153

## CHASE
freedom

📱 Manage your account online:     📞 Customer Service:     📲 Mobile: Visit chase.com
www.chase.com/freedom        1-800-524-3450        on your mobile browser



## ACCOUNT SUMMARY

| | |
|---|---|
| Account Number | |
| Previous Balance | |
| Payment, Credits | |
| Purchases | |
| Cash Advances | |
| Balance Transfers | $0.00 |
| Fees Charged | $0.00 |
| Interest Charged | +$13.31 |
| New Balance | |
| | |
| Opening/Closing Date | 09/18/13 - 10/17/13 |
| Credit Limit | |
| Available Credit | |
| Cash Access Line | |
| Available for Cash | |
| Past Due Amount | |
| Balance over the Credit Limit | |

## PAYMENT INFORMATION

| | |
|---|---|
| New Balance | |
| Payment Due Date | |
| Minimum Payment Due | |

Late Payment Warning: If we do not receive your minimum payment by the date listed above, you may have to pay a late fee of up to $35.00 and your APRs will be subject to increase to a maximum Penalty APR of 29.99%.

Minimum Payment Warning: If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance. For example:

| If you make no additional charges using this card and each month you pay... | You will pay off the balance shown on this statement in about... | And you will end up paying an estimated total of... |
|---|---|---|
| Only the minimum payment | | |
| | | (Savings=$ ) |

If you would like information about credit counseling services, call 1-866-797-2885.

## CHASE FREEDOM ULTIMATE REWARDS SUMMARY

Previous points balance
+ 1% (1 Pt)/$1 earned on all purchases
+ Bonus points from Ultimate Rewards Mall
= Total points available for redemption

💳 Redeeming your points for cash back is easy! For example, 2,000 points = $20 cash back. To review your reward options visit www.chase.com/freedom

You always earn an unlimited 1% cash back on all purchases. Activate new bonus categories every quarter, and you'll earn an additional 4% cash back, for a total of 5% cash back on up to $1,500 spent. Activate for free at chase.com/freedom.

## ACCOUNT ACTIVITY

| Date of Transaction | Merchant Name or Transaction Description | $ Amount |
|---|---|---|
| **PAYMENTS AND OTHER CREDITS** | | |
| 09/21 | | |
| 09/23 | AVIS.COM PREPAY 800-352-7900 NJ | |
| 09/21 | | |
| 09/23 | | |
| 09/25 | | |
| **PURCHASES** | | |
| 09/21 | | |
| 10/11 | CHERRY HILL LODGE CHERRY HILL NJ | $95.00 |
| 10/13 | | |
| **INTEREST CHARGED** | | |
| 10/17 | | |

This Statement is a Facsimile - Not an original



PLAINTIFF'S
EXHIBIT


**Bank**
America's Most Convenient Bank®

ALMA M BULLOCK

ACCOUNT ACTIVITY

Transactions by Date (continued)

| DATE | DESCRIPTION | DEBIT | CREDIT | BALANCE |
|------|-------------|-------|--------|---------|
| 10/1 | | 74.23 | | |
| 10/4 | PURCHASE ****5400 l201418 | 24.45 | | |
| 10/7 | | 100.00 | | |
| 10/7 | DDA | 0.83 | | |
| 10/9 | DDA | 12.28 | | |
| 10/9 | | 10.61 | | |
| 10/9 | WILLOW GROVE * PA | 4.66 | | |
| 10/10 | W ****5400 l201418 | 20.00 | | |
| 10/15 | | | 540.00 | 1,730.08 |
| 10/15 | VISA DDA PUR ****5400 l201418 AUT 101313 VISA DDA PUR CHERRY HILL DODGE      CHERRY HILL * NJ | 1,080.00 | | |
| 10/15 | | | | |
| 10/15 | | | | |
| 10/16 | | | | |
| 10/17 | | | | |
| 10/18 | | | | |
| 10/18 | | | | |
| 10/21 | | | | |

# Pennsylvania Inspection

Established 2002
ASE Certified

Fax:   (215) 336-1976
       (215) 336-1664

## *Advanced Auto*

### Complete Auto Repairs
State & Emission Inspection

Contact:  Dominic or Michael

1826-28 South 11th Street
Philadelphia, PA 19148

*\*\* Location:  between Mifflin & Sigel Streets on 11th Street \*\**



PLAINTIFF'S EXHIBIT
ALL-STATE LEGAL®

| Buyer Name and Address (including County and Zip Code) | Co-Buyer Name and Address (including County and Zip Code) | Creditor-Seller (Name and Address) |
|---|---|---|
| ALMA M. BULLOCK | PHILADELPHIA | PARK JEEP CHRYSLER DODGE |
| 9750 N. 20TH ST | | CHERRY HILL, NJ 08003 |
| PHILADELPHIA, PA 19133 | | 1805 W. MARLTON PKE #12 |
| | | CHERRY HILL, NJ 08003 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay the Creditor - Seller (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used/Demo | Year | Make and Model | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|
| NEW | 2014 | MITSUBISHI OUTLANDER SP | 4A4AR3AU2EE007743 | ☑ personal, family or household ☐ business ☐ agricultural |

## FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your down payment of $ 1000.00 |
|---|---|---|---|---|
| 11.00 % | 5795.18 | 22162.06 | 8675.24 | 10679.24 |

### Your Payment Schedule Will Be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | 414.03 | Monthly beginning 10/25/2014 |

Or As Follows:

Late Charge. If payment is not received in full within 10 days after it is due, you will pay a late charge of 5 % of the part of the payment that is late. If the vehicle is primarily for personal, family, or household use and the cash price is $ 10,000 or less, the charge for each late payment will be $ .

Prepayment. If you pay off early, you will not have to pay a penalty.

Security Interest. You are giving a security interest in the vehicle being purchased.

Additional Information: See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date and security interest.

### ITEMIZATION OF AMOUNT FINANCED

| 1 Cash Price (including $ 2152.56 sales tax) | $ 20542.56 (A) |
|---|---|
| 2 Total Downpayment = | |
| Trade-in 2011 JEEP PATRIOT SPORT (Year) (Make) (Model) | |
| Gross Trade-in Allowance | 10000.00 |
| Less Pay Off Made By Seller | 10000.00 |
| Equals Net Trade In | 0.00 |
| + Cash | NA |
| + Other | NA |
| (If total downpayment is negative, enter "0" and see 4J below) | 10000.00 (B) |
| 3 Unpaid Balance of Cash Price (1 minus 2) | 20542.56 (C) |
| 4 Other Charges including Amounts Paid to Others on Your Behalf (Seller may keep part of these amounts): | |
| A Cost of Optional Credit Insurance Paid to Insurance Company or Companies | JO SNELLE 5 1754 1963.02 |
| Life | NA |
| Disability | NA |
| B Other Optional Insurance Paid to Insurance Company or Companies | NA |
| C Official Fees Paid to Government Agencies | NA |
| to | NA |
| to | NA |
| to | NA |
| D "Optional" Gap Contract | NA |
| E Surcharge of Title Fee | NA |
| F Vehicle Tire Fee | NA |
| G Government Taxes Not Included in Cash Price | NA |
| H Government License and/or Registration Fees | NA |
| I Government Certificate of Title Fees | 724.10 |
| J Other Charges (Seller must identify who is paid and describe purpose) | NA |
| to for Prior Credit or Lease Balance | NA |
| to for | NA |
| to for | NA |
| to for | NA |
| to for | NA |
| to for | NA |
| to for | NA |
| to for | NA |
| Total Other Charges and Amounts Paid to Others on Your Behalf | 724.19 (D) |
| 5 Amount Financed (3 + 4) | 22162.06 (E) |

OPTION: ☐ You may pay no finance charge if the Amount Financed, item 5, is paid in full on or before _____, _____ Year. SELLER'S INITIALS _____

☐ If this box is checked, the following late charge applies to vehicles purchased primarily for business or agricultural use.
If a payment is not received in full within NA days after it is due, you will pay a late charge of $ NA or NA % of the part of the payment that is late, whichever is less.
If this box is not checked, the late charge in the "Federal Truth-In-Lending Disclosures" still applies.

OPTIONAL GAP CONTRACT. A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in item 4D of the Itemization of Amount Financed. See your gap contract for details.

Term NA Nits. _____

I want to buy a gap contract. X _Alma M Bullock_

Buyer Signs X _____

---

Insurance. You may buy the physical damage insurance this contract requires (see back) from anyone you choose who is acceptable to us. You are not required to buy any other insurance to obtain credit.

If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

Check the insurance you want and sign below:

#### Optional Credit Insurance
☐ Credit Life:  ☐ Buyer  ☐ Co-Buyer  ☐ Both
☐ Credit Disability (Buyer Only)

Premium:
Credit Life $ _____
Credit Disability $ _____
Insurance Company Name _____
_____
Home Office Address _____

Credit life insurance and credit disability insurance are not required to obtain credit. Your decision to buy or not buy credit life insurance and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. If you choose this insurance, the cost is shown in item 4A of the Itemization of Amount Financed. Credit life insurance is based on your original payment schedule. This insurance may not pay all you owe on this contract if you make late payments. Credit disability insurance does not cover any payments after you become disabled. Coverage for credit life insurance and credit disability insurance ends on the original due date for the last payment unless a different term for the insurance is shown below.

#### Other Optional Insurance
Type of Insurance _____ Term _____ NA
Premium $ NA
Insurance Company Name _____
Home Office Address _____ NA

Type of Insurance _____ Term _____ NA
Premium $ NA
Insurance Company Name _____
Home Office Address _____ NA

Other optional insurance is not required to obtain credit. Your decision to buy or not buy other optional insurance will not be a factor in the credit approval process. It will not be provided unless you sign and agree to pay the extra cost.

I want the insurance checked above.

X _____
Buyer Signature                    Date

X _____
Co-Buyer Signature                 Date

**THIS DOES NOT INCLUDE INSURANCE ON YOUR LIABILITY FOR BODILY INJURY OR PROPERTY DAMAGE. WITHOUT SUCH INSURANCE, YOU MAY NOT OPERATE THIS VEHICLE ON PUBLIC HIGHWAYS.**

Returned Check Charge. You agree to pay a charge of $ 20 if any check you give us is dishonored and the law allows it.

PLAINTIFF'S EXHIBIT

| | | |
|---|---|---|
| I Government Certificate of Title Fees | $ | 724.10 |
| J Other Charges (Seller must identify who is paid and describe purpose) | $ | NA |
| to _____ for Prior Credit or Lease Balance | $ | NA |
| to _____ for | $ | NA |
| to _____ for | $ | NA |
| to _____ for | $ | NA |
| to _____ for | $ | NA |
| to _____ for | $ | NA |
| to _____ for the part of the payment that is late, whichever is less. | $ | NA |
| to _____ for | $ | NA |
| Total Other Charges and Amounts Paid to Others on Your Behalf | $ | 724.10 (4) |
| 5 Amount Financed (3 + 4) | $ | 22162.06 (5) |

I want the Insurance checked above.

X _____
Buyer Signature                                 Date

X _____
Co-Buyer Signature                          Date

**THIS DOES NOT INCLUDE INSURANCE ON YOUR LIABILITY FOR BODILY INJURY OR PROPERTY DAMAGE. WITHOUT SUCH INSURANCE, YOU MAY NOT OPERATE THIS VEHICLE ON PUBLIC HIGHWAYS.**

OPTION: ☐ You pay no finance charge if the Amount Financed, item 5, is paid in full on or before _____ Year, _____ SELLER'S INITIALS.

Returned Check Charge: You agree to pay a charge of $ 20 if any check you give us is dishonored and the law allows it.

☐ If this box is checked, the following late charge applies to vehicles purchased primarily for business or agricultural use.
If a payment is not received in full within NA days after it is due, you will pay a late charge of $ NA or NA % of the part of the payment that is late, whichever is less.
If this box is not checked, the late charge in the "Federal Truth-In-Lending Disclosures" still applies.

OPTIONAL GAP CONTRACT. A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in item 4D of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.

Term NA Mos.                     NA
                                                          Name of Gap Contract
I want to buy a gap contract.
Buyer Signs X _Anna M. Billole_

**NO COOLING OFF PERIOD**
State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

HOW THIS CONTRACT CAN BE CHANGED. This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding.   Buyer Signs X _____ Co-Buyer Signs X _____
If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.
See back for other important agreements.

**NOTICE TO RETAIL BUYER**
Do not sign this contract in blank.
You are entitled to a copy of the contract at the time you sign.
Keep it to protect your legal rights.

You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You confirm that you received a completely filled-in copy when you signed it.
Buyer Signs X _Anna M. Billole_ Date 11/15/13 Co-Buyer Signs X _____ Date _____

Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other owner signs here X _____ Address _____
Seller signs CHERRY HILL MITSUBISHI Date 11/15/13 By X _____ Title _____

Seller assigns its interest in this contract to NMAC LEASE SERVICES INC. (Assignee) under the terms of Seller's agreement(s) with Assignee.
☐ Assigned with recourse    ☑ Assigned without recourse    ☐ Assigned with limited recourse

| Seller | By | Title |
|---|---|---|
| EQUUS MANAGEMENT CORP | CHERRY HILL MITSUBISHI | |

LAW FORM NO. 553-NJ (REV. 5/10) Patent No. D469,242
©2010 The Reynolds and Reynolds Company   TO ORDER: www.reyrem.com, 1-800-351-0960, fax 1-800-531-2065
THE PRINTER MAKES NO WARRANTY, EXPRESS OR IMPLIED, AS TO CONTENT OR

CUSTOMER/TRUTH IN LENDING COPY



**MITSUBISHI MOTORS**

OUTLANDER SPORT ES AWC
-DOOR SUV
LABRADOR BLACK PEARL / BLACK

2.0L DOHC I4 MIVEC
CONTINUOUSLY VARIABLE TRANSMISSION
50-STATE EMISSIONS STANDARD

**MECHANICAL FEATURES**
- ALL-WHEEL CONTROL (AWC)
- DRIVE MODE-SELECTOR (2WD/4WD/LOCK)
- FOUR WHEEL DISC BRAKES W/ ABS
- ELECTRONIC BRAKEFORCE DISTRIBUTION
- 4-WHEEL INDEPENDENT SUSPENSION
- ASSISTED ELECTRIC POWER STEERING
- ECO DRIVER INDICATOR LIGHT
- BRAKE ENERGY REGENERATING SYSTEM

**EXTERIOR FEATURES**
- 18" ALLOY WHEELS
- CHROME FRONT GRILLE SURROUND
- HEATED SIDEVIEW MIRRORS
- SIDE TURN INDICATORS
- COLOR KEYED OUTER DOOR HANDLES
- REAR LED TAIL LIGHTS
- REAR SPOILER

**INTERIOR FEATURES**
- AIR CONDITIONING W/ MICRON FILTER
- LEATHER WRAPPED STEERING WHEEL
- LEATHER WRAPPED SHIFT KNOB
- HIGH CONTRAST METERS
- FULL COLOR MULTI-INFORMATION
  DISPLAY
- FRONT MAP LIGHTS
- 6-WAY ADJUSTABLE DRIVER SEAT
- 60/40 SPLIT FOLD DOWN REAR SEATS
- REAR FLOOR HEATER DUCTS
- FLOOR MATS

**CONVENIENCE FEATURES**
- STEERING WHEEL MOUNTED CRUISE
  CONTROL AND AUDIO SWITCHES
- 140-WATT AM/FM/CD/MP3 AUDIO SYSTEM
  W/ 4 SPEAKERS
- FUSE HANDSFREE LINK SYSTEM® W/
  USB PORT
- RETRACTABLE ASSIST GRIPS
- DUAL FRONT CUP HOLDERS
- REAR SEAT CENTER ARMREST WITH 2
  CUP HOLDERS
- CENTER CONSOLE W/ ARMREST STORAGE
- POWER DOOR & TAILGATE LOCKS
- POWER WINDOWS & SIDEVIEW MIRRORS
- AUTO-OFF HEADLIGHTS
- TELESCOPIC STEERING COLUMN
- SERVICE REMINDER SYSTEM
- KEYLESS ENTRY WITH PANIC ALARM
- VARIABLE INTERMITTENT WIPERS
- REAR WINDOW WIPER
- 12V ACCESSORY OUTLET (2)
- REAR PRIVACY GLASS
- ROOF CARRIER PLUG-IN ACCOMMODATION

**SAFETY & SECURITY FEATURES**
- ADVANCED DUAL FRONT AIRBAGS
- FRONT SEAT SIDE AIRBAGS
- SIDE CURTAIN AIRBAGS
- DRIVER KNEE AIRBAG
- ACTIVE STABILITY CONTROL (ASC)

**SAFETY & SECURITY FEATURES (cont'd)**
- TIRE PRESSURE MONITORING SYSTEM
- LATCH SYSTEM FOR CHILD SEATS
- ANTI-THEFT ALARM SYSTEM
- ENGINE IMMOBILIZER
- HILL START ASSIST

**Optional Equipment**
FULL TANK OF GAS

CARGO PACKAGE
- REVERSIBLE CARGO MAT
- TONNEAU COVER
- CARGO NET

LED DAYTIME RUNNING LIGHTS
- WITH FRONT CORNER EXTENSIONS

| | |
|---|---|
| MSRP*: | $22,07 |
| Total Optional Equipment: | $82 |
| Subtotal: | $22,89 |
| Destination/Handling: | $82 |
| Total MSRP*: | $23,77 |

*MSRP (Manufacturer's Suggested Ret

Visit us at www.mitsubishicars.com

PLAINTIFF'S
EXHIBIT
G