IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ALMA BULLOCK,

            Plaintiff,

    v.

FOULKE MANAGEMENT CORP., et al.

            Defendants.

CIVIL ACTION
NO. 14-5869

## OPINION

**Slomsky, J.**                                                    **October 29, 2015**

## I.     INTRODUCTION

Plaintiff Alma Bullock brings this civil action against Defendants Foulke Management Corporation ("Foulke Management") and Cherry Hill Triplex for events arising out of Plaintiff's various lease and purchase agreements for vehicles supplied by Defendants.  (Doc. No. 21.)

Before the Court is Foulke Management's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. No. 23), which was filed on March 30, 2015.  For the following reasons, the Court will grant Foulke Management's Motion to Dismiss only to the extent that this case will be referred to arbitration.

## II.     BACKGROUND

Defendant Foulke Management, doing business as Cherry Hill Triplex, operates a car dealership that sells and leases both new and used vehicles in Cherry Hill, New Jersey.  (Doc. No. 21 at 1.)  On September 25, 2013, Plaintiff Alma Bullock read an advertisement in a newspaper placed by Cherry Hill Triplex for the sale of a 2010 Honda.  (Id. at 3.)  After calling Cherry Hill Triplex to confirm the availability of the advertised vehicle, Plaintiff visited the dealership and requested to see it.  (Id.)  The representative at the dealership, however, showed

her a used 2012 Nissan Versa, which Plaintiff purchased for $13,000.  (Id. at 4.)  The representative told Plaintiff that this vehicle would meet her needs for a safe and reliable vehicle. (Id.)

During the following weeks, Plaintiff experienced several mechanical problems with the used Nissan Versa that she purchased from Defendant.  (Id.)  After Plaintiff brought the vehicle back to the dealership for service on three occasions, a representative of Cherry Hill Triplex offered to exchange the Nissan Versa for another similarly priced vehicle that was available. (Id.)  Upon returning the next day to the dealership to make the exchange, Plaintiff was informed that the vehicle previously promised to her had been sold.  (Id.)  Plaintiff was told, however, that a used 2011 Jeep Patriot was available and that it would accommodate her stated needs.  (Id.) On October 14, 2013, Plaintiff traded in her 2012 Nissan Versa for the 2011 Jeep and was required to pay an additional $1,985.  (Id.)

Unfortunately, Plaintiff experienced mechanical problems with her 2011 Jeep and was instructed by Cherry Hill Triplex to have the car inspected.  (Id. at 5.)  The inspection technician, Dominic Didonato, Jr., told Plaintiff that her vehicle needed several repairs in order to pass inspection and that she should return the vehicle to Cherry Hill Triplex to have the required repairs made.  (Id. at 6.)  On November 15, 2013, Plaintiff returned to Cherry Hill Triplex, which refused to make the required repairs.  (Id.)  Instead, the dealership offered to lease Plaintiff a new 2014 Mitsubishi Outlander Sport under a 36-month lease.  (Id. at 7.)  Plaintiff alleges that, although she did not want to lease a new vehicle, she did not understand what other remedies were available to her for obtaining another vehicle and thus signed the lease.  (Id. at 7-8.) Furthermore, Plaintiff alleges that she received only a $10,000 credit for trading in her 2011 Jeep

for the 2014 Mitsubishi Outlander Sport, even though she had spent a total of $14,985 on the Jeep.  (Doc. No. 1-2 at 31.)

The purchase and lease agreements that Plaintiff signed for each vehicle included a provision requiring that any claims against Defendants must be brought in arbitration within 180 days of signing the agreement.  (Doc. No. 21, Ex. B, H, L; Doc. No. 23, Ex. C.)  The agreements also provided that any claims made under the Uniform Commercial Code ("UCC") must be brought in arbitration within a year.  (Id.)  The pertinent provision, which was directly above Plaintiff's signature on the contracts, reads:

> ANY DISPUTE BETWEEN CUSTOMER AND DEALER SHALL BE BROUGHT IN ARBITRATION IN THE STATE OF NEW JERSEY AND NEW JERSEY LAW SHALL APPLY.  CUSTOMER AGREES THAT CUSTOMER WILL BRING ANY CLAIMS CUSTOMER MAY HAVE AGAINST DEALER, EXCEPT FOR UCC CLAIMS BUT, INCLUDING CLAIMS UNDER THE NEW JERSEY CONSUMER FRAUD ACT, WITHIN 180 DAYS FROM THE DATE OF THIS AGREEMENT AND IF NOT BROUGHT WITHIN 180 DAYS ALL CLAIMS WILL BE BARRED.  UCC CLAIMS MUST BE BROUGHT WITHIN ONE YEAR.

(Id.)

Plaintiff also signed separate arbitration agreements that accompanied her lease and purchase contracts.  (Doc. No. 23, Exs. B, C, G.)  These agreements include an arbitration provision similar to the one set forth in the sales and lease contracts.  It provides as follows:

> WAIVER OF RIGHT TO JURY TRIAL: You or we expressly waive all right to pursue any legal action to seek damages or any other remedies in a court of law, including the right to a jury trial.
> …
>
> CUSTOMER AGREES TO WAIVE THE APPLICABLE STATUTE OF LIMITATIONS AS FOLLOWS: CUSTOMER AGREES THAT IT WILL BRING ANY AND ALL CLAIMS CUSTOMER MAY HAVE AGAINST DEALER, EXCEPT FOR CLAIMS FOR BREACH OF CONTRACT UNDER THE NEW JERSEY UNIFORM COMMERCIAL CODE, BUT INCLUDING CLAIMS UNDER THE NEW JERSEY CONSUMER FRAUD ACT WITHIN 180 DAYS

FROM THE DATE OF THIS AGREEMENT.  IF CLAIMS ARE NOT
BROUGHT WITHIN 180 DAYS THE CLAIMS WILL BE TIME BARRED.
ALL CLAIMS UNDER THE NEW JERSEY CODE FOR BREACH OF
CONTRACT MUST BE BROUGHT WITHIN ONE YEAR AFTER THE
CAUSE OF ACTION ACCRUES.

(Id.)

Plaintiff alleges that she was besieged by a "myriad" of contracts from Defendants, none

of which she understood when she signed them.  (Doc. No. 21 at 8.)  Moreover, Plaintiff avers

that she was not provided with copies of several of the contracts.  (Id.)  Due to her confusion,

Plaintiff sought advice "on several occasions" with consumer affairs specialists after signing the

agreements, and she received legal counsel from an attorney in February 2014.  (Id. at 9-10, Ex.

I.)

Based on these events, Plaintiff filed a Complaint against Defendants on September 12,

2014 in the Philadelphia Court of Common Pleas.  (Doc. No. 1-2.)  In the Complaint, Plaintiff

alleges that Defendants committed statutory and common law fraud, negligence, violations of the

Magnuson-Moss Federal Trade Commission Improvement Act, theft, violations of the

Pennsylvania Unfair Trade Practices and Consumer Protection Act, violations of the

Pennsylvania Automotive Industry Trade Practices Act, and violations of the Truth in Lending

Act.  (Id. at 22-38.)  Defendants removed the case to federal court on October 16, 2014 pursuant

to diversity of citizenship and federal question jurisdiction.  (Doc. No. 1.)

On November 4, 2014, Plaintiff filed an Amended Complaint.  (Doc. No. 5.)  On

November 6, 2014, Defendants filed a Motion to Dismiss the Amended Complaint.  (Doc. No.

6.)  A hearing was held before the Court on Defendant's Motion to Dismiss on January 8, 2015.

(Doc. No. 18.)  Following that hearing, Plaintiff filed a Second Amended Complaint ("SAC"), in

which she reasserted her previous claims against Defendants and added claims of UCC

violations for fraud and misrepresentation and for breach of implied warranty of merchantability. (Doc. No. 21 at 22.)[1]  Plaintiff asserted in the SAC that under the UCC, the contracts that she had signed were unconscionable.  (Id. at 23.)  Defendant Foulke Management then filed a Motion to Dismiss the Second Amended Complaint.  (Doc. No. 23.)  Plaintiff filed an Opposition to the Motion on April 9, 2015 (Doc. No. 25), and Defendant filed a reply on April 15, 2015 (Doc. No. 26).

## III.    STANDARD OF REVIEW

The Federal Arbitration Act establishes a strong federal policy in favor of resolving disputes through arbitration.  Alexander v. Anthony Int'l L.P., 341 F.3d 256, 265 (3d Cir. 2003). While there is a presumption in favor of enforcing an arbitration agreement, the Court must carefully analyze any claim opposing the validity of such agreements.  Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd., 636 F.2d 51, 54 (3d Cir. 1980).  When considering a motion to compel arbitration that is opposed on the ground that no valid agreement to arbitrate had been entered into by the parties, the Court should view the facts in a light most favorable to the party opposing arbitration.  Id.[2]  In doing so, the Court may consider all affidavits, exhibits and discovery in the record.

## IV.    ANALYSIS

Plaintiff's claims are governed by the purchase and lease contracts which she agreed to by executing the contracts with her signature. They provide that any claims that she might have against Defendants must be brought in arbitration within 180 days of signing the agreements, or

---

[1]  Because Plaintiff filed a SAC, Defendant's Motion to Dismiss the Amended Complaint (Doc. No. 6) was denied as moot without prejudice on March 19, 2015 (Doc. No. 22).

[2]  Although Defendant filed a Motion to Dismiss (Doc. No. 23), it requests, in the alternative, that the Court compel arbitration.  The Court accordingly will consider Defendant's Motion as a Motion to Compel Arbitration.

within a year should those claims be made under the UCC.  Her claims also are controlled by the arbitration agreements that she signed with each contract, which reassert the same terms. Defendant requests in its Motion to Dismiss that the Court compel arbitration pursuant to the arbitration clause in these agreements.[3]  (Doc. No. 23 at 13-19.)

     In opposition to Defendants' Motion to Dismiss, Plaintiff claims that the arbitration clause in the agreements, and the entirety of the agreements, are unconscionable and amount to a contract of adhesion.  "[W]hen a contractual party challenges the validity of an arbitration agreement by contending that one or more of its terms is unconscionable and unenforceable, a question of arbitrability is presented . . . for judicial determination."  Puleo v. Chase Bank USA, N.A., 605 F.3d 172, 180 (3d Cir. 2010).  By contrast, when the validity of an entire contract is challenged, that issue is to be "resolved by the arbitrator in the first instance, not by a federal or state court."  Preston v. Ferrer, 552 U.S. 346, 349 (2008).  Because Plaintiff asserts that the arbitration clause in each of the six contracts she signed is unconscionable (Doc. No. 25 at 13-14), the Court will address the unconscionability of that provision.  In doing so, it will apply New Jersey law.  See Nino v. Jewelry Exchange, Inc., 609 F.3d 191, 200 (3d Cir. 2010) (explaining that when a federal court reviews the unconscionability of an arbitration clause, state law governs the court's analysis).

---

[3]  Defendant also asks the Court to dismiss Plaintiff's claims asserted in Counts III-XI as time barred under the agreements, and asks that the Court dismiss Count I for failure to state a cause of action under N.J. Stat. 12A:2-721 (UCC § 2-721).  (Doc. No. 23.)  Because the Court finds that Plaintiff's claims must be pursued in arbitration, the Court need not address Defendant's alternative reasons for dismissal.  See Betchel do Brasil Construcoes Ltda. v. UEG Araucaria Ltda., 638 F.3d 150, 158 (2d Cir. 2011) (whether Plaintiff's claims were brought within the applicable statute of limitations is a matter for the arbitrator to decide); Escobar-Noble v. Luxury Hotels Inter. of Puerto Rice, Inc., 680 F.3d 118 (1st Cir. 2012) (same).

**A.  The Arbitration Clause Is Not Unconscionable**

Under New Jersey law, "courts may refuse to enforce contracts that are unconscionable."

Muhammad v. Cnty. Bank of Rehoboth Beach, Del., 912 A.2d 88, 96 (N.J. 2006).  A party

raising a claim of unconscionability has the burden of showing "some over-reaching or

imposition resulting from a bargaining disparity between the parties, or such patent unfairness in

the terms of the contract that no reasonable [person] not acting under compulsion or out of

necessity would accept them." Rodriguez v. Raymours Furniture Co., 93 A.3d 760, 766 (N.J.

Super. Ct. App. Div. 2014) (citing Rotwein v. Gen. Accident Grp., 247 A.2d 370, 377 (N.J.

Super. Ct. Law Div. 1968)).  When a party claims that a contractual waiver of rights is

unconscionable, that "party's waiver of statutory rights must be clearly and unmistakably

established, and contractual language alleged to constitute a waiver will not be read

expansively." Id. (citing Garfinkel v. Morristown Obstetrics & Gynecology Assocs., 773 A.2d

665, 670 (N.J. 2001)) (internal quotation marks omitted).

Unconscionability analysis requires consideration of two factors—procedural

unconscionability and substantive unconscionability.  Rodriguez, 93 A.2d at 767.  Procedural

unconscionability arises out of defects in the process by which the contract was formed, and it

"can include a variety of inadequacies, such as age, literacy, lack of sophistication, hidden or

unduly complex contract terms, bargaining tactics, and the particular setting existing during the

contract formation process."  Id. (citing Muhammad, 912 A.2d at 96).  In general, "contracts of

adhesion invariably evidence some characteristics of procedural unconscionability."

Muhammad, 912 A.2d at 97.  "The essential nature of a contract of adhesion is that it is

presented on a take-it-or-leave-it basis, commonly in a standardized printed form, without

opportunity for the adhering party to negotiate except perhaps on a few particulars."  Id. at 96

(internal quotations omitted).

7

"The determination that a contract is one of adhesion, however, is the beginning, not the end, of the inquiry into whether a contract, or any specific term therein, should be deemed unenforceable based on policy considerations." Id. at 96-97 (internal quotation marks omitted). A sharpened inquiry concerning substantive unconscionability is necessary when a contract of adhesion is involved. See id. at 97. Substantive unconscionability "suggests the exchange of obligations so one-sided as to shock the court's conscience." Rodriguez, 93 A.2d at 767 (citing Sitogum Holdings, Inc. v. Ropes, 800 A.2d 915, 921 (N.J. Super. Ct. 2002)).

Generally, a "sliding scale" analysis is used when considering procedural and substantive unconscionability to determine whether a contract is enforceable. Muhammad, 912 A.2d at 97 n. 3; Rodriguez, 93 A.3d at 767; Sitogum Holdings, Inc., 800 A.2d at 922-23. Under this approach, a contractual provision may be unconscionable "if there is a gross level [of unconscionability] in one category but only a lesser level in the other." Rodriguez, 93 A.3d at 767.

Given these legal precepts, the Court will first address the procedural unconscionability of the arbitration clause, and will then address the substantive unconscionability of its terms.

### 1.    The Arbitration Clause Is Not Procedurally Unconscionable

Plaintiff asserts that the agreements she signed, including the arbitration provisions contained therein, are procedurally unconscionable because they are contracts of adhesion. (Doc. No. 25 at 11-19.) Under Plaintiff's theory, Plaintiff had no bargaining power when she signed the sales and lease agreements and accepted the separate arbitration agreements accompanying them. Additionally, Plaintiff maintains that the arbitration provisions were presented to her inconspicuously and therefore are procedurally unconscionable.[4] Plaintiff

---

[4]  Plaintiff incorrectly presents this argument in her opposition to Defendant's Motion to Dismiss as a matter of substantive unconscionability. (Doc. No. 25 at 12-16.) Under New Jersey law, this argument involves a matter of procedural unconscionabilty. See Rodriguez, 93 A.2d at 771.

further states that Defendants employed "coercive sales tactics" and "high pressure sales methods" as part of a scheme to compel Plaintiff to sign each agreement against her will.  (Id. at 16.)  According to Plaintiff, this alleged scheme renders the agreements procedurally unconscionable.

On their face, the six agreements signed by Plaintiff appear to constitute contracts of adhesion. That is, they were proffered by Defendants on standardized printed forms on a take-it-or-leave-it basis and without any opportunity for Plaintiff to negotiate the terms, including the arbitration clause.  See Rudbart v. N. Jersey Dist. Water Supply Comm'n, 605 A.2d 681, 686 (N.J. 1992).  However, a contract of adhesion does not constitute a procedurally unconscionable contract per se.  See Rodriguez, 93 A.3d at 771.  Specifically, a court nonetheless is permitted to find that an arbitration provision contained within a contract of adhesion is enforceable.  Id.

The degree of procedural unconscionability surrounding the six agreements in this case is underwhelming.  First, the agreements that Plaintiff signed were contained on a single page, and the arbitration clauses were presented in bold and capital letters.  Moreover, the clause was not buried within the agreement, but rather was placed directly above the customer's signature line. Finally, the language used in the arbitration clause was simple, straightforward, and not complex. These factors reduce any level of procedural unconscionability regarding the agreements at issue. See id. (finding a contract of adhesion not procedurally unconscionable for the same reasons).

Second, the Court is not convinced that Defendants' conduct during the vehicle transactions was procedurally unconscionable.  Plaintiff claims that she fell victim to a bait-and-switch scheme that forced her to engage in multiple transactions with Defendants, requiring her to agree to numerous arbitration provisions that she did not understand.  Plaintiff argues that

Defendant's exploited her age and lack of sophistication in the law to induce her to sign the six agreements.  (Doc. No. 25. 15-16.)

Giving Plaintiff the benefit of the doubt, her several dealings with Defendants may have constituted a harrowing experience for her.  This alone, however, does not amount to procedural unconscionability.  Plaintiff signed six separate agreements with Defendants over a period of two months, all of which—in bold and capital letters directly above the signature line—included a provision that she must bring any claims she might have in arbitration.  Furthermore, under New Jersey law, "an individual who signs an agreement is assumed to have read it and understood its legal effect," even when the agreement requires that individual to bring her claims in arbitration. Rodriguez, 93 A.3d at 769; see also Rudbart, 605 A.2d at 685.  Applying this legal principle, it logically follows that one who has agreed to the same contractual provision on six separate occasions would have the perspicacity to understand the content of its terms.  Plaintiff fails to explain how her consent to the arbitration provision was made unknowingly or involuntarily.

For these reasons, the Court finds that the arbitration provisions agreed to by Plaintiff are not procedurally unconscionable.

## 2.      The Arbitration Clause Is Not Substantively Unconscionable

Plaintiff contends that the arbitration provisions are substantively unconscionable because they are exceedingly one-sided and therefore shock the conscience.  (Doc. No. 25 at 14.) Plaintiff does not allege, however, that the clause requiring her to bring her claims in arbitration is substantively unconscionable.  Rather, the crux of Plaintiff's argument is that the time limitation imposed in the arbitration clause is substantively unconscionable.  The Court disagrees.

Under New Jersey law, an applicable statute of limitations may be modified by agreement.  Rodriguez, 93 A.3d at 768.  A time limitation on a statute of limitations is

10

enforceable so long as it is "reasonable and does not contravene public policy." Id. at 769.  A "contractual provision for a time limitation in which [] claimants must bring suit" is reasonable and enforceable if it allows the claimant a sufficient opportunity to identify and investigate a potential loss giving rise to the asserted claims.  Eagle Fire Prot. Corp. v. First Indem. of Am. Ins. Co., 678 A.2d 699, 706 (N.J. 1996).

By Plaintiff's own admission in her SAC, she discovered mechanical defects with the purchased vehicles shortly after acquiring them.  Plaintiff also states that she was aware that she was asked to pay additional money for the purchase of the second vehicle, and that she received only a $10,000 credit when she traded in that second vehicle for the third, leased vehicle.

Plaintiff further concedes that because of her alleged confusion regarding the agreements she signed, she sought advice "on several occasions" regarding her transactions with consumer affairs specialists, and that she received legal counsel from an attorney in February 2014.  (Doc. No. at 9-10, Ex. I.)  Given these consultations made within the 180-day window, it follows that Plaintiff would have been made aware of any viable claims against Defendant, including unconscionability, within that time period.  Thus, Plaintiff had the ability and ample time within the 180-day window to discover her potential claims, and in fact did so.[5]

Plaintiff has not provided any legal support for her conclusion that the arbitration clause contained in the agreements she signed is so one-sided that it shocks the conscience. Consequently, the arbitration clauses are not substantively unconscionable.

---

[5]   Plaintiff argues in her Opposition to Defendant's Motion to Dismiss that, by nature of a month-to-month lease, the time limitation provision in that particular agreement is unreasonable, for a claim might arise throughout the duration of the lease.  (Doc. No. 25 at 20.)  However, Plaintiff does not challenge the enforceability of the time limitation in her Complaint and only asserts in her SAC claims for alleged conduct that arose within 180 days of signing the agreements.  Thus, Plaintiff's argument is unavailing.

**B.  Plaintiff's Claims Must Be Brought in Arbitration**

Because the Court finds that the arbitration clauses in the agreements that Plaintiff signed are not unconscionable, Plaintiff's claims are arbitrable.  <u>See</u> <u>Puleo</u>, 605 F.3d at 172.  The Court therefore will not entertain Plaintiff's claims against Defendants, as they must be decided by an arbitrator pursuant to the arbitration clause to which Plaintiff agreed.  As such, the Court will refer the matter to arbitration.

**C.  Defendant's Other Claims Need Not Be Addressed**

Because the Court will compel arbitration as requested by Defendant Foulke Management, the Court need not address Defendant's other arguments in support of dismissing Plaintiff's claims.

**V.     CONCLUSION**

For the foregoing reasons, Defendant Foulke Management's Motion to Dismiss will be granted only to the extent that the matter will be referred to arbitration.  An appropriate Order follows.